# United States Court of Appeals for the Federal Circuit

---

**SHAWN A. HORNSETH,**
*Petitioner*

**v.**

**DEPARTMENT OF THE NAVY,**
*Respondent*

---

2018-1188

---

Petition for review of the Merit Systems Protection Board in No. SF-0752-17-0271-I-1.

---

Decided: February 27, 2019

---

JEREMY AARON MORRIS, Glisson & Morris, PS, Port Orchard, WA, argued for petitioner.

NATHANAEL YALE, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by ALLISON KIDD-MILLER, ROBERT EDWARD KIRSCHMAN, JR., JOSEPH H. HUNT.

---

Before LOURIE, BRYSON, and DYK, *Circuit Judges.*

LOURIE, *Circuit Judge.*

Shawn A. Hornseth petitions for review of the final decision of the Merit Systems and Protection Board ("the Board") affirming the decision of the United States Navy to suspend him indefinitely without pay. *Hornseth v. Dep't of Navy*, No. SF-0752-17-0271-I-1, 2017 WL 3980894 (M.S.P.B. Sept. 8, 2017). For the reasons that follow, we affirm.

BACKGROUND

Hornseth was an employee of the Puget Sound Naval Shipyard and Intermediate Maintenance Facility ("Shipyard"), where he worked as a combined trade supervisor. The Shipyard is a secure facility that houses nuclear powered vessels, and every position at the Shipyard, including Hornseth's, requires a security clearance. During his employment, Hornseth attended rehabilitation for alcoholism and provided the Navy with documents regarding his treatment. From Hornseth's rehabilitation facility discharge letter, the Navy learned that Hornseth had used marijuana during his employment.

On December 12, 2016, Hornseth received a letter informing him that the Commander of the Shipyard intended to suspend his access to classified information and his assignment to a sensitive position. Three days later, the Commander issued a letter notifying Hornseth that his security clearance was suspended. On the same day, Hornseth was notified via letter from the Operations Program Manager that the Navy proposed to indefinitely suspend his employment. Hornseth filed a reply to the proposal, and the Navy assigned Charlie Combs, a supervisor at the Shipyard, to be the deciding official regarding the proposed suspension.

While the proposed suspension was pending before him, Combs engaged in a series of communications with the Human Resources ("HR") staff at the Shipyard. Upon receipt of Hornseth's reply, a Shipyard HR employee sent an e-mail to Combs stating that she would "research the

case law" cited in those communications for further discussion. J.A. 240. The employee then sent an e-mail to Combs stating that Hornseth's "attorney cites the employee's due process," and asking whether Combs had "the delegated authority on behalf of the Commander to offer/find an interim job [for Hornseth]." J.A. 229. In that e-mail, the employee asked Combs to respond concerning his availability to "discuss this case so [Combs could] make a decision." *Id.* Combs responded via e-mail, stating that he was a "designated/qualified hiring official." J.A. 231.

The employee then e-mailed Combs and asked whether he had "made a decision," J.A. 231, to which Combs responded that "[t]he operations department has no positions that do not require a security clearance" and that "it [would be] fiscally irresponsible to generate an unneeded position to accommodate the request for work without a clearance," J.A. 239. The employee responded to Combs's e-mail, informing him that "there are three concerns [Combs had] to consider in a Security case" and that Combs should "[k]eep this in mind, should the employee pursue this further." *Id.* No response to the employee's e-mail is in the record. The HR department then drafted a five-page "Decision on Proposed Indefinite Suspension" and forwarded it to Combs. Combs signed the decision, and it issued on January 20, 2017. J.A. 46–50. Hornseth appealed the decision to the Board.

Hornseth argued that he was denied minimum due process of law in that (1) the reply process was an empty formality because Combs did not have the ability to take or recommend alternative agency action and (2) Combs and the Shipyard HR staff engaged in an improper *ex parte* communication.

The Board's administrative judge (the "AJ") disagreed. He concluded in an initial decision on September 8, 2017 that a due process violation may occur when a reply process is an empty formality, for example, if a deciding official

lacks the ability to take or recommend alternative agency action based on an appellant's reply, J.A. 21 (citing *McGriff v. Dep't of Navy*, No. DC-0752-09-0816-I-1, 2012 WL 1434869, ¶¶ 33–36 (M.S.P.B. Apr. 26, 2012)), and he found that administrative leave would be inadequate to satisfy due process. J.A. 22. Regardless, however, the AJ here *sua sponte* determined that investigative leave was an available alternative, and, because Combs could have provided Hornseth with investigative leave, the process afforded Hornseth due process. J.A. 22–26.

The AJ also concluded that, while Combs engaged in certain *ex parte* communications, those communications "were not so substantial and prejudicial such that no employee could fairly be required to be subjected to a deprivation of property under these circumstances." J.A. 18–19. Before the AJ, Combs testified that in his decision he considered only the proposal letter, some references cited in the letter, and Hornseth's written reply. J.A. 16. Combs also testified that his *ex parte* contacts were only made to clarify the arguments raised in the reply or other material in the record and procedural matters. According to Combs, none of the communications yielded additional information and, even though the Shipyard HR staff had drafted the five-page decision, it only did so after he had made his decision, and he signed it as his own. J.A. 17. The AJ credited Comb's testimony as "direct, forthright, basically unrebutted, and plausible" to find no due process violation or harmful procedural error. *Id.* at 18.

Finding no violations of due process or harmful procedural errors, the AJ affirmed the Navy's suspension decision. His decision became the decision of the Board because Hornseth did not appeal to the full Board, which at that time lacked a quorum. Hornseth appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

DISCUSSION

Our scope of review in an appeal from a decision of the Board is limited. We must affirm a Board decision unless we find it to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

Hornseth raises two arguments on appeal: (1) that the AJ erred in finding no due process violation, and (2) that Combs's *ex parte* communication constituted a due process violation. We address each argument in turn.

I.

Hornseth first argues that due process requires that a deciding official have authority to change the outcome of an adverse action and that neither administrative nor investigative leave were available alternative penalties. Hornseth relies primarily on Board precedent for the proposition that a deciding official must have the authority to change the outcome of an adverse action for the process to comport with due process. J.A. 23–25 (citing *McGriff*, 2012 WL 1434869). According to Hornseth, an employee's opportunity to respond would be meaningless "if the deciding official lacked the authority or discretion to weigh the employee's response or if the official's decision was automatic or predetermined in favor of the agency[,] no matter how compelling the employee's case or how severely his interests would be affected [by] the action." Appellant's Br. 22. Hornseth claims that, as a result, because Combs did not have authority to change the outcome of the proposed action, he has been subjected to a lack of due process.

The government responds that this court's review of an adverse action arising out of a security clearance determination is limited. It asserts that the Navy provided Hornseth with all the procedural protections he was

entitled to when it indefinitely suspended him for failing to maintain a security clearance and eligibility to occupy a sensitive position. Appellee's Br. 13. According to the government, our review should be limited to determining whether the agency provided minimal due process, which requires evaluating only whether a security clearance is required, whether the clearance was revoked, and whether Hornseth received the procedural protections of 5 U.S.C. § 7513. The government submits that Hornseth received such protections here. *Id.* at 17.

We agree with the government that an alternative action need not be available in a security-clearance case. It is well-settled that a government employee has no "right" to a security clearance. *Dep't of Navy v. Egan*, 484 U.S. 518, 528 (1988). Although the Board does not have broad authority to review a security-clearance determination, "[a]n employee who is removed for 'cause' under § 7513, when his required clearance is denied, is entitled to the several procedural protections specified in that statute." *Id.* at 530.

As a result, we have held that review of adverse actions stemming from security clearance determinations is limited to determining (1) "whether a security clearance was denied," (2) "whether the security clearance was a requirement for appellant's position," and (3) "whether the procedures set forth in [§] 7513 were followed." *Hesse v. Dep't of State*, 217 F.3d 1372, 1376 (Fed. Cir. 2000).

Here, the parties do not dispute that Hornseth's security clearance was revoked and that maintaining it was a requirement for his position. We therefore turn to the procedures required by § 7513(b), which read as follows:

(b) An employee against whom an action is proposed is entitled to--

(1) at least 30 days' advance written notice, unless there is reasonable cause to believe

the employee has committed a crime for which a sentence of imprisonment may be imposed, stating the specific reasons for the proposed action;

(2) a reasonable time, but not less than 7 days, to answer orally and in writing and to furnish affidavits and other documentary evidence in support of the answer;

(3) be represented by an attorney or other representative; and

(4) a written decision and the specific reasons therefor at the earliest practicable date.

5 U.S.C. § 7513(b). Section 7513 thus requires the agency to provide "notice of denial or revocation [of the security clearance]; a statement of the reason(s) upon which the negative decision was based; and an opportunity to respond." *Lyles v. Dep't of Army*, 864 F.2d 1581, 1583 (Fed. Cir. 1989) (quoting *Egan v. Dep't of Navy*, 28 M.S.P.R. 509, 519 (1985), *vacated*, 802 F.2d 1563 (Fed. Cir. 1986), *rev'd on other grounds*, 484 U.S. 518 (1988) (alteration in original).

Those procedures were met in this case. Hornseth received notice, had an opportunity to respond and to be represented, and was provided with a written decision with reasons. Thus, he received the procedural protections provided by law.

However, the AJ's review deviated from this framework. Specifically, the AJ concluded that an alternative position *must* be available to comport with due process. *See* J.A 21 ("[A] due process violation may be present when the reply process is an empty formality because the deciding official lacks the ability to take or recommend alternative agency action based on an appellant's reply (i.e., do anything but affirm the proposed action).")

Such a conclusion is at odds with our case law, which makes clear that an employee has a right to be transferred to a nonsensitive position *only* if that right is conferred by a statute or regulation. *Lyles*, 864 F.2d at 1583 ("When one is hired for a position he is expected to meet the requirements of that position. If he does not, he may be dismissed unless additional rights are available from *some other source*." (emphasis added)). Indeed, when an employee who is hired for a position requiring a security clearance fails to possess one, "not even reasonable accommodation is due," *Griffin v. Def. Mapping Agency*, 864 F.2d 1579, 1581 (Fed. Cir. 1989) ("When one who is hired for a position fails to meet the essential requirement of that position that he secure a security clearance, not even reasonable accommodation is due."), and § 7513 contains no obligation for the agency to transfer an employee to a nonsensitive position, even if that is possible, *id.* If there is no alternative position authorized by statute, a deciding official is not required to create one. *Id.* Accordingly, we conclude that the AJ erred in requiring the deciding official to have available an alternative position.

Although a deciding official need not have available an alternative penalty, the statute certainly contemplates that the deciding official have authority to act on behalf of the agency. The adverse-action procedure described in § 7513 is effected by the *agency*. *See* § 7513(a) ("Under regulations prescribed by the Office of Personnel Management, an *agency* may take an action covered by this subchapter against an employee only for such cause as will promote the efficiency of the service." (emphasis added)); 5 C.F.R. § 752.404(g)(1) ("In arriving at its decision, the *agency* will consider only the reasons specified in the notice of proposed action and any answer of the employee or his or her representative, or both, made to a designated official and any medical documentation reviewed under paragraph (f) of this section." (emphasis added)).

As applied in this case, the requirement that the deciding official have authority to act on behalf of the agency is clear from the Navy's own instructions regarding the adverse-decision process. U.S. Dep't of Navy, SECNAV Instruction 12752.1A (May 3, 2016) § 12(a)(1)(b) (stating that an employee is entitled to a "written notice," which must include "[t]he name and title of the official designated to hear an oral reply and/or receive a written reply," and requiring such designated official to "have authority to either make or recommend a final decision on the proposed action."), § 12(a)(2)(d) (entitling an employee to a written decision that "[i]s signed by an official in a higher level position than the official who proposed the action, unless the activity head/commander issued the advance notice, in which case the activity head/commander may issue the written decision."). Here, Combs's authority to act is undisputed. Therefore, Combs's action did not violate any applicable statute or regulation.

Because we conclude that the AJ erred in requiring a supervisor to have available an alternative position, we need not reach whether investigative leave would have been such an adequate alternative. Moreover, we regard this statement by the AJ of the requirement of an available position to be harmless error because Hornseth was provided with all the procedural protections provided by law.

## II.

Hornseth also challenges the AJ's findings regarding *ex parte* communication between the deciding official, Combs, and the Shipyard's HR department.

The introduction of new and material information via *ex parte* communication to a deciding official deprives an employee of a guarantee of notice and opportunity to respond. *Stone v. FDIC*, 179 F.3d 1368, 1376 (Fed. Cir. 1999). But "not every *ex parte* communication is a procedural defect so substantial and so likely to cause prejudice that it undermines the due process guarantee and entitles the

claimant to an entirely new administrative proceeding." *Id.* at 1376–77.

In evaluating the effect of *ex parte* communication, we consider whether the communication introduced "cumulative information;" "whether the employee knew of the error and had a chance to respond to it; and whether the *ex parte* communications were of the type likely to result in undue pressure upon the deciding official to rule in a particular manner." *Id.* at 1377. The inquiry is "whether the *ex parte* communication is so substantial and so likely to cause prejudice that no employee can be fairly required to be subjected to a deprivation of property under such circumstances." *Id.* The test is an objective one.

The AJ applied these factors and found that the *ex parte* communication here did not deprive Hornseth of due process because upon reviewing the evidence, the AJ found that Combs's *ex parte* communications involved only cumulative material. J.A. 17. The AJ also credited Combs's testimony that his *ex parte* contacts were to clarify the arguments raised in the reply and that, although the HR department drafted the decision letter, it did so after he had made his decision. *Id.* The AJ "credit[ed] that testimony as forthright, plausible, reasonable, and consistent with or at least not contradicted by other evidence." *Id.*

We can reverse the Board's findings only if they are unsupported by substantial evidence. 5 U.S.C. § 7703. Moreover, "evaluation of witness credibility is within the discretion of the Board and . . . in general, such evaluations are 'virtually unreviewable' on appeal." *King v. Dep't of Health & Human Servs.*, 133 F.3d 1450, 1453 (Fed. Cir. 1998) (quoting *Clark v. Dep't of Army,* 997 F.2d 1466, 1473 (Fed. Cir. 1993)).

Although Hornseth had not seen the communication to Combs prior to the discovery process in the appeal, the AJ reasoned that the information it contained was already known to Hornseth or cumulative. These findings are

supported by substantial evidence and are subject to deferential review. Considering the findings in light of our case law, we conclude that the AJ did not err in concluding that the *ex parte* communication here did not amount to a due process violation.

We have considered Hornseth's remaining arguments and find them unpersuasive.

CONCLUSION

The AJ incorrectly required the deciding official in a case involving an adverse action based on a security-clearance determination to have an alternative, available penalty. Although we hold this requirement to be inconsistent with our case law, we affirm the final decision of the Board because its ultimate conclusion—that Hornseth's suspension did not violate due process—was correct.

**AFFIRMED**