NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ZAINAB MOHAMMED,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

---

2019-1226

---

Petition for review of the Merit Systems Protection Board in No. SF-1221-18-0101-W-1.

---

Decided: June 11, 2019

---

ZAINAB MOHAMMED, Monterey, CA, pro se.

VERONICA NICOLE ONYEMA, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by JOSEPH H. HUNT, STEVEN JOHN GILLINGHAM, ROBERT EDWARD KIRSCHMAN, JR.

---

Before PROST, *Chief Judge,* LOURIE and HUGHES, *Circuit Judges.*

PER CURIAM.

Zainab Mohammed appeals from a decision of the Merit Systems Protection Board denying her request for corrective action. *See Mohammed v. Army*, No. SF-1221-18-0101-W-1 (M.S.P.B. Aug. 17, 2018). Because substantial evidence supports the Administrative Judge's finding that she did not establish a violation of the Whistleblower Protection Act, we affirm.

I

The Army hired Ms. Mohammed in 2011 as an assistant professor at the Defense Language Institute Foreign Language Center (DLIFLC). Her appointment was temporary, and the Army renewed her contract every six to twelve months.

In 2013, Ms. Mohammed reported her immediate supervisor for "violat[ing] rules, wast[ing] government funds, abus[ing] his authority, and committ[ing] a prohibited personnel practice." Gov. App'x at 6. She subsequently filed an individual right of action in 2014 alleging that, in retaliation for her disclosures, Hiam Kanbar, the Associate Provost of Undergraduate Education, sent her a letter threatening adverse personnel action. The Administrative Judge found that the agency had violated the Whistleblower Protection Act and instructed it to rescind the letter.

In 2015, Ms. Mohammed received mixed performance evaluations from students who had taken her class. Some students reported that Ms. Mohammed "micro-manage[d]" them, treated students unequally, and engaged in combative conduct. Gov. App'x at 52–53. The Chief of the

Evaluation Division issued a red flag notification[1] to, among others, Dr. Kanbar and Betty Leaver, the Provost.

Before Dr. Kanbar or Ms. Leaver could investigate the incidents described in the red flag notification, the Army transferred Ms. Mohammed from the Middle East I School to the Middle East II School. Because she had been a team leader at the Middle East I School, she began as a team leader at the Middle East II School. The Middle East II School already had a team leader in place, however, so the Army soon reassigned Ms. Mohammed to a team member position. Gorge Bebawi, Deanna Tovar, Dr. Kanbar, and Ms. Leaver were her first-, second-, third-, and fourth-line supervisors, respectively.

Dr. Tovar received notice of Ms. Mohammed's red flag notification shortly after Ms. Mohammed's transfer and met with Mr. Bebawi to discuss it. Because DLIFLC policy required supervisors to counsel and mentor teachers who received a red or yellow flag, Mr. Bebawi issued Ms. Mohammed an informal memorandum of counseling on January 25, 2016. But he reassured Ms. Mohammed that it would not affect her future career and that he would give her a fresh start.

In February 2016, Ms. Mohammed applied for a position as an Oral Proficiency Interview tester. The program did not accept her. Ms. Mohammed complained to the Chief of the Evaluation Division and the Director of the Language Proficiency Assessment Directorate, which managed the Oral Proficiency Interview program. She alleged that the two individuals chosen for the program had not worked for DLIFLC for long enough to apply.

---

[1] A red flag notification "is a reporting system that identifies student comments considered to be serious or immediate threats, acts, or behaviors within particular categories." Gov. App'x at 8 n.3.

Ms. Mohammed then asked to teach study hall in April 2016. Dr. Tovar denied the request and explained that the agency had a policy of not allowing teachers who had received a red flag to teach study hall for six months. On April 27, 2016, Ms. Mohammed emailed Colonel Phillip Deppert and Ms. Leaver to accuse Dr. Kanbar and Dr. Tovar of retaliating against her for her 2014 individual right of action. Ms. Leaver forwarded the email to Dr. Kanbar and Dr. Tovar. Dr. Tovar informed Ms. Mohammed that she would investigate her concerns.

On June 1, 2016, Mr. Bebawi, Ms. Mohammed's first line supervisor, conducted an unannounced observation of her classroom. The schedule listed the lesson for the day as helping students review a chapter of their books. But when Mr. Bebawi entered the classroom, the students were undergoing self-study. Mr. Bebawi sent Ms. Mohammed a memorandum of poor performance and expressed the need for interactive lessons. He invited Ms. Mohammed to meet that afternoon. Ms. Mohammed responded that she had permission to conduct self-study that day and accused Mr. Bebawi of targeting her. She emailed the memorandum of poor performance to Ms. Leaver and Col. Deppert.

The next day, Ms. Mohammed met with Dr. Tovar, a union representative, and a few others. Dr. Tovar explained to Ms. Mohammed the rationale behind each complained-of personnel action, but she did not think that Ms. Mohammed was satisfied with her explanations. On September 28, 2016, Dr. Tovar informed Ms. Mohammed that the Army would not renew her contract. The Army placed Ms. Mohammed on administrative leave on October 24, 2016, and her appointment expired five days later.

Ms. Mohammed filed a complaint with the Office of Special Counsel challenging her red flag notification, memorandum of counseling, transfer, change of duties, denial of conducting Oral Proficiency Interview tests, denial of teaching study hall, administrative leave, and termination.

When the Office of Special Counsel closed its investigation a year later, Ms. Mohammed appealed to the Board.

The Administrative Judge denied Ms. Mohammed's request for corrective action. The Administrative Judge determined that, although Ms. Mohammed had engaged in protected activity by filing an individual right of action in 2014, Ms. Mohammed had not proven by preponderant evidence that this activity contributed to her transfer, change of duties, denial of conducting Oral Proficiency Interview tests, or denial of teaching study hall.[2] The Administrative Judge noted that Mr. Bebawi and Dr. Tovar learned of Ms. Mohammed's suit *after* the allegedly adverse personnel actions occurred. And although Dr. Kanbar knew of the suit beforehand, Ms. Mohammed had not shown that Dr. Kanbar participated in any of the challenged actions or that he used Dr. Tovar to retaliate against her.

The Administrative Judge also found that Ms. Mohammed had failed to establish that her April 27, 2016, and June 1, 2016, complaints to Col. Deppert and Ms. Leaver were protected disclosures. She reasoned that "a disinterested observer knowing the facts readily ascertainable by the appellant could not conclude that there was government wrongdoing." Gov. App'x at 18; *see also id.* at 23. Nor was there any evidence the agency had abused its authority or created a hostile work environment.

The Administrative Judge did, however, find that the April 27 email, which Ms. Leaver had forwarded to Dr. Tovar and Dr. Kanbar, included a protected disclosure because it redisclosed Ms. Mohammed's 2014 individual right

---

[2] Because the red flag notification and memorandum of counseling were not formal disciplinary measures, the Administrative Judge found that they were not actionable personnel activity. She thus declined to consider them further.

of action. And because Dr. Tovar and Ms. Leaver participated in the decision to place Ms. Mohammed on administrative leave, the Administrative Judge determined that Ms. Mohammed had established a prima facie case of retaliation. But the Administrative Judge held that the agency had shown by clear and convincing evidence that it would have taken the same action even without any protected disclosure. She noted that several individuals had expressed concerns with Ms. Mohammed's behavior, and Mr. Bebawi credibly testified that Ms. Mohammed was constantly complaining about others. Additionally, although the record lacked evidence about similar actions taken against non-whistleblowers, Dr. Tovar stated that she had placed other employees on leave for disruptive behavior. And the Administrative Judge found that Dr. Tovar lacked motive to retaliate and that Ms. Leaver had, if anything, only a slight motive to retaliate.

As to her termination, the Administrative Judge credited agency testimony that it would have terminated Ms. Mohammed regardless of her disclosures because it reduced its teaching program in 2016. The Administrative Judge also determined that the Army had terminated non-whistleblower employees. Finally, she again found that Dr. Tovar and Steven Collins, another official involved in the decision, lacked motive to retaliate and that Ms. Leaver had, if anything, only a slight motive to retaliate.

Ms. Mohammed now appeals.[3] We have jurisdiction under 28 U.S.C. § 1295(a)(9).

---

[3]   The initial decision became final after Ms. Mohammed elected not to pursue additional review before the Board. *See* 5 C.F.R. § 1201.113. We therefore treat the initial decision as the Administrative Judge's final decision for this appeal.

## II

We affirm the decisions of the Board unless they are "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Hayes v. Dep't of the Navy*, 727 F.2d 1535, 1537 (Fed. Cir. 1984). To withstand substantial evidence review, "[t]he record need only disclose such relevant evidence as might be accepted by a reasonable mind as adequate to support the conclusion reached." *Hayes*, 727 F.2d at 1537.

The Whistleblower Protection Act "prohibits any federal agency from taking, failing to take, or threatening to take or fail to take, any personnel action" against an employee for making a protected disclosure. *Fellhoelter v. Dep't of Agric.*, 568 F.3d 965, 970 (Fed. Cir. 2009) (citing 5 U.S.C. § 2302(b)(8)). To establish a prima facie case under the Act, an employee must show by preponderant evidence that she made a protected disclosure and that this disclosure contributed to the personnel action. *See id.* at 970 (citing 5 U.S.C. § 1221(e)(1)). The agency can rebut a prima facie case by proving, by clear and convincing evidence, that it would have taken the same personnel action even without any protected disclosures. *Id.* at 970–71 (citing 5 U.S.C. § 1221(e)(2)). The Board considers three factors to determine if the agency has rebutted the employee's prima facie case: (1) "the strength of the agency's evidence in support of its personnel action;" (2) "the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision;" and (3) "any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

A.

First, we address the red flag notification and informal memorandum of counseling. The Administrative Judge determined that neither action constituted actionable personnel activity. Ms. Mohammed implicitly contests this finding by premising many of her challenges on the merits of each action.

As relevant here, "personnel action" under the Whistleblower Protection Act includes "other disciplinary or corrective action." 5 U.S.C. § 2302(a)(2)(A)(iii). Substantial evidence supports the determination that the red flag notification and informal memorandum of counseling do not constitute disciplinary action within the scope of § 2302(a)(2)(A)(iii). The red flag notification "is a reporting system that identifies student comments considered to be serious or immediate threats, acts, or behaviors within particular categories." Gov. App'x at 8 n.3. It does not propose any disciplinary measures but instead highlights areas requiring additional investigation. The informal memorandum of counseling issued to Ms. Mohammed informed her about the negative feedback and reminded her about workplace expectations. It did not propose any disciplinary measures, and Mr. Bebawi expressly informed Ms. Mohammed that the memorandum of counseling would not have any impact on her future career because he wanted to give her a fresh start. The record thus sustains the Administrative Judge's finding that they are not covered personnel activities.

Ms. Mohammed appears to argue that the agency failed to follow proper procedure in issuing the red flag notification and the informal memorandum of counseling. But Ms. Mohammed did not raise this argument before the Board and has thus waived it on appeal. And in any event, because substantial evidence supports the finding that the red flag notification and memorandum of counseling are

not adverse personnel activities, neither action justifies relief under the Whistleblower Protection Act.[4]

### B.

Next, we address Ms. Mohammed's April 27 and June 1 emails to Col. Deppert and Ms. Leaver. The Administrative Judge determined that neither email constituted a protected disclosure.[5] Ms. Mohammed challenges these findings.

Under 5 C.F.R. § 1209.4(b), "a communication concerning policy decisions that lawfully exercise discretionary authority" is not a protected disclosure "unless the employee or applicant providing the disclosure reasonably believes that the disclosure evidences any violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." In other words, for her emails to constitute protected disclosures, Ms. Mohammed needed to reasonably believe that she was disclosing government wrongdoing. We apply the reasonable person standard to assess an individual's professed beliefs. *Lachance v. White*, 174 F.3d 1378, 1380–81 (Fed. Cir. 1999).

The April 27 email alleged that Dr. Kanbar and Dr. Tovar had retaliated against Ms. Mohammed for her 2014 individual right of action. The Administrative Judge determined that a reasonable person could not have believed that the email disclosed government wrongdoing.

---

[4] For similar reasons, we decline to consider Ms. Mohammed's remaining arguments about the red flag notification and memorandum of counseling.

[5] We consider the substance of the April 27 email independently of its rediscosure of Ms. Mohammed's 2014 individual right of action, which the Administrative Judge found *was* a protected disclosure.

Substantial evidence supports this finding.[6]  Dr. Tovar did not learn of Ms. Mohammed's 2014 individual right of action until she received the April 27 email from Ms. Leaver, which occurred after her transfer, change of duties, denial of conducting Oral Proficiency Interview tests, and denial of teaching study hall.  And while Dr. Kanbar knew of the suit before these actions took place, the record contains no evidence that Dr. Kanbar participated, either directly or indirectly, in them.

The June 1 email contained Mr. Bebawi's memorandum of poor performance.  The Administrative Judge found that a reasonable person could not have believed she was disclosing government wrongdoing by sending this single poor performance review.  The record supports this finding. Not only did she include only a single poor performance review in her email, which standing by itself likely would not establish government wrongdoing, but the agency also gave her ample opportunity to dispute or remedy the review.  For example, Mr. Bebawi offered to meet with Ms. Mohammed that afternoon,  giving her a chance to dispute his review.  He also requested that Ms. Mohammed plan another lesson that he could observe within the next two weeks, giving her the opportunity to gain a more favorable review.  Under the circumstances, we affirm the Administrative Judge's determination.

## C.

We now address the Administrative Judge's determination that disclosure of Ms. Mohammed's 2014 individual right of action did not contribute to her transfer, change of

---

[6]    Ms. Mohammed argues that forwarding the email to Dr. Kanbar and Dr. Tovar reflects a retaliatory culture. But we review for substantial evidence, and the record contains adequate evidence to support the Administrative Judge's finding to the contrary.

duties, denial of conducting Oral Proficiency Interview tests, and denial of teaching study hall.

The Administrative Judge found no evidence that Dr. Tovar was involved in Ms. Mohammed's transfer, change of duties, or denial of conducting Oral Proficiency Interview tests. Ms. Mohammed has failed to remedy the lack of evidence on appeal, so we decline to reverse this determination. The Administrative Judge also found that, although Dr. Tovar was involved in denying Ms. Mohammed permission to teach study hall, there was no evidence the 2014 individual right of action contributed to the decision. Substantial evidence supports this determination. First, Dr. Tovar did not learn of Ms. Mohammed's individual right of action until Ms. Leaver forwarded the April 27 email to her, weeks after she had denied the study hall request. Second, DLIFLC policy prevented individuals who had received a red flag within the last six months from teaching study hall.[7]

We also affirm the finding that Dr. Kanbar did not directly or indirectly participate in Ms. Mohammed's transfer, change of duties, denial of conducting Oral Proficiency Interview tests, or denial of teaching study hall. The Administrative Judge noted that there was no evidence that Dr. Kanbar knew about any of these actions before they took place, and Ms. Mohammed has not furnished additional evidence on appeal. Although she suggests that Dr.

---

[7] Ms. Mohammed challenges the Administrative Judge's finding that this policy existed. She contends that the agency created it after the fact. But the record shows that Dr. Tovar "provided guidance that no instructors with negative performance evaluations, e.g. Red Flags, would be eligible" to teach study hall. Pet. App'x doc. 10 p. 2. And even if the agency did not memorialize this policy into a formal memorandum until December 19, 2017, an agency need not write out a policy for it to exist.

Kanbar had to know about her transfer and demotion because Dr. Kanbar was in her chain of command, we reject the contention that he must have been involved based simply on his position, especially because she testified to his non-involvement before the Board.

D.

Next, we address the *Carr* factors. The Administrative Judge found that Ms. Mohammed had established a prima facie case of retaliation based on her administrative leave and termination. But after weighing the *Carr* factors, it concluded that the agency had shown by clear and convincing evidence that it would have acted similarly even without Ms. Mohammed's disclosure. Ms. Mohammed challenges this determination.

First, Ms. Mohammed argues that the Administrative Judge erred in crediting the agency's explanation that it terminated Ms. Mohammed because it did not have enough work to warrant her continued employment. *See Carr*, 185 F.3d at 1323. She contends that the Administrative Judge failed to consider the availability of positions she could have filled.[8] The Administrative Judge, however, *did* consider this evidence. But she rejected it because it was "not informative of the need for MSA or Iraqi dialect teachers in 2016 when the appellant's contract expired." Gov. App'x at 27. She instead credited agency testimony that workload decreased in 2016. We decline to reweigh this evidence on appeal. *See Hayes*, 727 F.2d at 1537.

Ms. Mohammed alternatively argues that the Administrative Judge ignored evidence that she performed well at her job, which suggests that poor performance was a

---

[8]    Ms. Mohammed also appears to challenge the decision not to transfer her to the Continuing Education School. But she did not raise this issue before the Administrative Judge. We therefore decline to address it.

pretext for her removal. But the Administrative Judge credited the agency's explanation that *workload*, not poor performance, accounted for her termination.[9] And even if performance were relevant, the record contains evidence that Ms. Mohammed received negative feedback from students and supervisors and caused disruptions at work. Because this evidence is adequate to support the Administrative Judge's findings, we affirm.

Second, Ms. Mohammed contends that substantial evidence does not support the finding that agency officials lacked a retaliatory motive. *See Carr*, 185 F.3d at 1323. Dr. Tovar and Ms. Leaver participated in the decision to place Ms. Mohammed on administrative leave, and Dr. Tovar, Ms. Leaver, and Mr. Collins participated in the decision to terminate her.[10] Ms. Mohammed appears to rely on knowledge of the 2014 individual right of action to satisfy her burden of proof on retaliatory motive. But mere knowledge of this suit does not establish a retaliatory motive, especially because it does not implicate the relevant individuals. Even considering the possibility of an indirect influence, the Administrative Judge found that only Ms. Leaver would have a motivation to retaliate—and even then, only a minor one—because she was Dr. Kanbar's first-line supervisor. Ms. Mohammed has offered no evidence to contradict this finding.

Third, Ms. Mohammed argues that the Administrative Judge failed to consider the lack of any example of an "employee who was treated similar to [Ms. Mohammed] with

---

[9] Ms. Mohammed also challenges the determination that workload, rather than poor performance, accounted for her termination. But we review for substantial evidence, and the record supports the workload rationale.

[10] Mr. Bebawi suggested terminating Ms. Mohammed, but he was not involved in the final decision about whether to renew her contract.

the absence of [w]histleblowing activity." Continuation of
Informal Brief at 5; *see Carr*, 185 F.3d at 1323. The Ad-
ministrative Judge, however, *did* acknowledge that there
was "no evidence whether non-whistleblowers specifically
have been placed on administrative leave" or terminated.
Gov. App'x at 26. But she credited the testimony of Dr.
Tovar that she had placed other employees on administra-
tive leave for disruptive behavior. And she credited agency
testimony that it declined to renew the contract of between
50 and 70 other temporary employees who had not engaged
in whistleblowing activity. Without any indication that the
Administrative Judge abused her discretion in crediting
this testimony, we defer to her determination. *See
Hornseth v. Dep't of the Navy*, 916 F.3d 1369, 1376 (Fed.
Cir. 2019). The record thus supports the Administrative
Judge's finding that the agency treated non-whistleblowers
and Ms. Mohammed alike.

Because substantial evidence supports the Administra-
tive Judge's determinations about each *Carr* factor, we af-
firm the conclusion that the agency proved by clear and
convincing evidence that it would have taken the same ac-
tion even without any protected disclosures.

E.

We now address Ms. Mohammed's allegations that the
Administrative Judge abused her discretion in crediting
the testimony of agency officials such as Dr. Tovar and Ms.
Leaver. She contends that these witnesses lied on the
stand and that their testimony is internally inconsistent.
But "evaluation of witness credibility is within the discre-
tion of the Board and . . . in general, such evaluations are
'virtually unreviewable' on appeal." *Hornseth*, 916 F.3d at
1376 (quoting *King v. Dep't of Health & Human Servs.*, 133
F.3d 1450, 1453 (Fed. Cir. 1998)). Ms. Mohammed has not
established that the Administrative Judge abused her dis-
cretion. And we find unpersuasive the contention that the
testimony of each agency witness is internally inconsistent

or inconsistent with the testimony of other agency witnesses.

### F.

Next, we address res judicata and collateral estoppel. Ms. Mohammed alleges that the agency impermissibly punished her twice for the same act by denying her permission to teach study hall after it had already issued an informal memorandum of counseling based on her red flag notification. We reject this assertion. Res judicata and collateral estoppel require litigation of some sort. *See Carson v. Dep't of Energy*, 398 F.3d 1369, 1375 (Fed. Cir. 2005) (listing the requirements of res judicata) *Kroeger v. U.S. Postal Serv.*, 865 F.2d 235, 239 (Fed. Cir. 1988) (listing the requirements of collateral estoppel). Neither the denial of teaching study hall nor the informal memorandum of counseling involved litigation.

### G.

Finally, we address Ms. Mohammed's due process arguments. She contends that the agency deprived her of due process by issuing a memorandum of counseling without considering "the valid DLIFLC Command Policy on Discipline of Employee dated 2015," Continuation of Informal Brief at 2, which states that the agency should provide "employees a reasonable opportunity to respond to any proposed discipline, whether formal or informal," Pet. App'x doc. 2 p. 4. We disagree that the memorandum of counseling falls within the umbrella of "proposed discipline, whether formal or informal." Mr. Bebawi reassured Ms. Mohammed that the memorandum of counseling would not have any implications on her future career because he would give her a fresh start. It thus was not a disciplinary measure.

She also argues that the agency deprived her of due process by placing her on administrative leave and terminating her without giving her a chance to appeal or find out

the reasons behind these actions.  But Ms. Mohammed, as a temporary employee, lacked any constitutionally protected property interest in her continued employment.  *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 578 (1972).  She contends that her contract with the agency created such rights, but we disagree.  This challenge seems more appropriately suited to a breach of contract claim, which we decline to consider on appeal because Ms. Mohammed did not raise this issue before the Board.

## III

We have considered Ms. Mohammed's remaining arguments and find them unpersuasive.  Because substantial evidence supports the Administrative Judge's determination that the agency did not violate the Whistleblower Protection Act, we affirm.

### AFFIRMED

No costs.