NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**NATHANIEL R. MCCLURE,**

*Petitioner*

**v.**

**DEPARTMENT OF VETERANS AFFAIRS,**

*Respondent*

---

2023-1751

---

Petition for review of the Merit Systems Protection Board in Nos. DE-1221-16-0219-W-1, DE-4324-16-0220-I-1.

---

Decided: August 21, 2024

---

NATHANIEL RAY MCCLURE, I, Wichita, KS, pro se.

KARA M. WESTERCAMP, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by REGINALD THOMAS BLADES, JR., BRIAN M. BOYNTON, PATRICIA M. MCCARTHY.

---

PER CURIAM.

Nathaniel R. McClure petitions for review of a Merit Systems Protection Board ("Board") final order upholding the initial decision denying his request for corrective action. *McClure v. Dep't of Veterans Affs.*, Nos. DE-4324-16-0220-I-1, DE-1221-16-0219-W-1, 2023 WL 1860684 (M.S.P.B. Feb. 9, 2023) ("*Final Order*"); *McClure v. Dep't of Veterans Affs.*, Nos. DE-4324-16-0220-I-1, DE-1221-16-0219-W-1, 2016 WL 3881323 (M.S.P.B. July 11, 2016) ("*Initial Decision*").[1] For the reasons below, we *affirm*.

## I.    BACKGROUND

Mr. McClure, a veteran, was employed by the Department of Veterans Affairs ("VA") at the Wichita, Kansas, Veterans Affairs Medical Center ("Wichita VAMC") from October 5, 2014, to April 17, 2015. *Final Order* at *1; *Initial Decision* at 2–3. On March 22, 2015, the VA converted Mr. McClure to a career-conditional appointment from a temporary appointment, subject to the completion of a one-year probationary period. *Final Order* at *1; *Initial Decision* at 2.

Mr. McClure alleged that he made protected disclosures to Dr. Robert Coleman, Chief of Surgery and Orthopedic Services, claiming that the VA was (1) "manipulating data regarding patient wait time for surgery so it appeared shorter than reality," (2) "fac[ing] a critical shortage of staff in its operating rooms," (3) "ma[king] only minimal attempts to repair ongoing leaks in the operating rooms," and (4) "fail[ing] to pay outside vendors for their consults."

---

[1]    In this case, the Board affirmed the Initial Decision except as modified by the Final Order. *Final Order* at *1. Because the reported version of the Initial Decision is not paginated, citations in this opinion are to the version of the Initial Decision included in the corrected supplemental appendix filed by the government. For example, *Initial Decision* at 1 is found at page 20 of the supplemental appendix.

*Initial Decision* at 12 (internal quotations omitted). Mr. McClure testified that Ms. Trudy Hill, Dr. Coleman's assistant, was also present when Mr. McClure made these disclosures. *Initial Decision* at 8, 13.

From March 24 to March 26, 2015, Mr. McClure attended a three-day meeting held by the Wichita VAMC. *Final Order* at *1; *Initial Decision* at 2. During the meeting, Mr. McClure "allegedly threw his pen down in frustration, refused to sit at a table with his group, and stated that the lead [meeting] facilitator 'better not make [him] go full soldier on her.'" *Final Order* at *1; *Initial Decision* at 3; S. App'x 68.[2] Mr. McClure also allegedly stated that he would like to "blow [the facilitator's] car about three feet off the ground." *Final Order* at *1; *Initial Decision* at 3; *see* S. App'x 69. Witnesses to this incident reported his conduct to agency officials. *Final Order* at *1; *Initial Decision* at 3. Ms. Hill and Ms. Laura Weir, a compliance officer, witnessed the incident and shared their concerns about Mr. McClure's conduct at a meeting on April 16, 2015, with Mr. Francisco Vazquez, Wichita VAMC Director. *Initial Decision* at 3. Mr. Vazquez communicated these concerns to Ms. Sandra Pope, Chief of Knowledge Management and Analytics. *Id.*; S. App'x 41.

On April 17, 2015, the VA terminated Mr. McClure during his probationary period. *Final Order* at *1; *Initial Decision* at 3–4. Ms. Pope issued a notice of termination to Mr. McClure, stating that he "ha[s] been observed, waving [his] arms in angry gestures during meetings, throw[i]n[g] pens during verbal disagreements in meetings, refusing to sit down at meetings and stand[ing] with [his] arms crossed, interrupting meetings." S. App'x 41. Ms. Pope also noted that "it was reported that [Mr. McClure] made a statement that [he] 'will blow up' a staff member's car," and

---

[2]    "S. App'x" refers to the corrected supplemental appendix, ECF No. 23, filed by the Respondent.

that he "made a statement that [he] ha[d] 'fortified [his] home with bullet proof glass and clear shooting lanes' and that [he] ha[d] stockpiled weapons at [his] home." *Id.* The notice of termination indicated that these actions "caused alarm in others and concern for safety and is a direct violation of the Violence in the Workplace policy of the VA." *Id.*

Mr. McClure appealed his probationary termination to the Board, alleging that his termination constituted whistleblower reprisal under the Whistleblower Protection Enhancement Act of 2012 and discrimination against his uniformed service under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"). *Final Order* at \*1; *Initial Decision* at 1–2.

On July 11, 2016, the administrative judge issued an Initial Decision, denying Mr. McClure's request for corrective action based on his whistleblower reprisal and USERRA claims. *Initial Decision* at 1–2, 16. Regarding Mr. McClure's USERRA claim, the administrative judge found Mr. McClure's "uniformed service was not a substantial or motivating factor in his termination." *Id.* at 11. Regarding his whistleblower protection claim, the administrative judge found Mr. McClure "established his prima facie claim of whistleblower reprisal," *id.* at 14, but the VA "demonstrate[d] by clear and convincing evidence that it would have terminated [him] even absent his whistleblowing." *Id.* at 16.

Mr. McClure filed a petition for review of the initial decision. *Final Order* at \*1. In its Final Order, the Board modified the Initial Decision to supplement the administrative judge's analysis of the whistleblower reprisal claim, but otherwise affirmed the Initial Decision and denied Mr. McClure's petition for review. *Id.* Specifically, the Board conducted a more thorough analysis of the *Carr* factors and concluded that: (1) "the agency's evidence supporting [Mr. McClure's] termination is strong," *Final Order* at \*5;

(2) "the evidence of agency motive to retaliate is weak," *id.* at *6; and (3) "this is not a case that hinges on the third *Carr* factor," *id.*; *see also Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999) (stating the *Carr* factors). Weighing the *Carr* factors, the Board agreed that the agency met its overall burden by clear and convincing evidence. *Final Order* at *6.

Mr. McClure timely petitioned for review. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## II.  DISCUSSION

We set aside a Board decision if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Standley v. Dep't of Energy*, 26 F.4th 937, 942 (Fed. Cir. 2022), *cert. denied*, 142 S. Ct. 2873 (2022). "[W]e review the Board's underlying factual findings for substantial evidence." *Bryant v. Merit Sys. Prot. Bd.*, 878 F.3d 1320, 1325 (Fed. Cir. 2017). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Standley*, 26 F.4th at 942 (internal quotation marks and citation omitted).

Mr. McClure argues that the Board made legal errors in upholding the VA's termination. *See* Pet'r's Br. 15–27. He also disputes several of the Board's factual findings. *See id.* at 4–15. As discussed below, we are not persuaded by these arguments.

### A.

Mr. McClure argues that the Board erred by allowing the agency to change the charge of the termination letter from violation of the "Violence in the Workplace policy of the VA" to "Employee Code of Conduct." *Id.* at 4, 16, 21. He also alleges that the Board improperly added to the charge that he made the statement "better not make [him]

go full soldier on her," even though that statement did not appear in the termination letter. *Id.* at 15. Additionally, he argues that the Board erred by breaking the VA's single charge into multiple charges. *Id.* at 17–18. He further contends that the Board erred by allowing into the record Ms. Weir's statement and testimony, which was not known by the deciding official at the time of his termination. *Id.* at 25.

Mr. McClure's arguments are without merit because they are based on misstatements of the record and the Board's decisions. First, violating the Violence in the Workplace policy of the VA was not the sole explanation for his termination. S. App'x 41. For example, the termination letter also explains that Mr. McClure's actions "caused alarm in others and concern for safety," and specifically identified many of the statements by Mr. McClure that caused alarm and safety concerns. *Id.* Additionally, although the Board found that Mr. McClure did make the "full soldier" comment and clarified the context, the Board made this factual finding while making credibility determinations when discussing motivating factors of Mr. McClure's termination relating to his USERRA claim. *Initial Decision* at 7–10. The Board did not recognize the "full soldier" comment as a separate charge or specification as Mr. McClure alleges. Therefore, his argument that the Board changed the charge does not show whistleblower reprisal or anti-military animus. Besides the argument relating to the "full soldier" comment, Mr. McClure fails to identify, and we fail to see, how the Board broke a single charge into multiple charges in sustaining the VA's termination. Appellant's Br. 17–18; S. App'x 41. Lastly, Mr. McClure's contention that Ms. Weir's account was not available to the VA is not supported by the record. The Board found Ms. Weir shared with Mr. Vazquez her concerns about Mr. McClure's conduct, and Ms. Pope relied on Mr. Vazquez's account of these concerns in making the termination decision. *Initial*

*Decision* at 3–4, 10; *see also* S. App'x 105–07, 244–47. Mr. McClure's arguments therefore are unavailing.

Mr. McClure also makes several arguments that the VA failed to follow proper procedure in his termination. He argues that the VA failed to notify him of his probationary status, Pet'r's Br. 18, and that it was improper for the VA to terminate him without following the procedures set out in the Employee Code of Conduct. *Id.* at 16–17. But probationary employees like Mr. McClure are not entitled to the same protections as other employees. *See Mastriano v. F.A.A.*, 714 F.2d 1152, 1155 (Fed. Cir. 1983) ("[T]he appeal rights of a probationary employee are extremely limited . . . ."). A probationary employee may only appeal an agency's termination decision to the Board if the termination does not occur in accordance with the procedures set forth in 5 C.F.R. § 315.805, or if the termination is based on discrimination for political reasons or marital status.[3] *Bante v. Merit Sys. Prot. Bd.*, 966 F.2d 647, 649 (Fed. Cir. 1992). Section 315.805 only provides protection when the termination was "for reasons based in whole or in part on conditions arising before his appointment." 5 C.F.R. § 315.805. Because the above-discussed arguments are not

---

[3] The Civil Service Reform Act of 1978 (CSRA) does set out certain procedural protections for those terminated who meet the statutory definition of an employee. *See, e.g.*, 5 U.S.C. § 7513; *Cerwonka v. Dep't of Veterans Affs.*, 915 F.3d 1351, 1356 (Fed. Cir. 2019) (explaining the agency's obligations under Chapter 75 of the CSRA). But a probationary employee does not meet that definition. *See* 5 U.S.C. § 7511(a)(1); *Bush v. Lucas*, 462 U.S. 367, 385 & n.28 (1983) (noting that federal civil servants are granted comprehensive substantive and procedural protections against adverse action but explaining that probationary employees are not entitled to the same appeal rights as non-probationary employees).

directed to 5 C.F.R. § 315.805 or to a political or marital status discrimination claim, Mr. McClure cannot raise them before the Board, or before us on a petition for review. Moreover, Mr. McClure did not explain, and we fail to see, how these arguments relate to the Board's findings under USERRA or whistleblower reprisal claims.

Mr. McClure further argues that the VA and the Board erred by considering pre-appointment evidence in violation of 5 C.F.R. § 315.805. Pet'r's Br. 10–11. Specifically, he argues that Ms. Weir's statement was based on her interactions with Mr. McClure prior to his appointment on March 22, 2015. *See id.* at 19–20. Section 315.805 gives a probationary employee the opportunity to respond if the termination was based on pre-appointment evidence. 5 C.F.R. § 315.805. A review of the record shows that Ms. Weir's statement did not refer to any pre-appointment conduct. *Initial Decision* at 4; *see also* S. App'x 79 (statement of Ms. Barton who is now known as Ms. Weir). Therefore, the Board did not err by considering pre-appointment evidence.

Lastly, Mr. McClure argues that the Board erred in finding the third *Carr* factor was not relevant. Pet'r's Br. 20–21. He argues that Ms. Pope is a similarly situated employee because she violated the Employee Code of Conduct by failing to investigate and document the allegations. *Id.* Therefore, Mr. McClure contends that he should receive the same treatment as Ms. Pope. *Id.* Even taking Mr. McClure's allegations as true, they do not show that any other employees "caused alarm in others and concern for safety," S. App'x 41, a stated basis for his termination. Accordingly, we find that the Board did not err in finding there to be no evidence of any similarly situated employee and finding that "this is not a case that hinges on the third *Carr* factor." *Final Order* at *6.

B.

Mr. McClure also disputes several of the Board's factual findings, arguing that: (1) the termination letter's characterization of his conduct was inaccurate, Pet'r's Br. 4–6, 8, 14, 19; (2) the Board erred by crediting certain witnesses' testimony, *id.* at 8–12, 19, 24–25; and (3) the Board failed to consider other evidence. *Id.* at 22. We are not persuaded by these arguments and conclude that the Board's factual findings are supported by substantial evidence.

First, Mr. McClure argues that the termination letter was inaccurate in its description of the incident. *Id.* at 4–6. For example, he argues that the termination letter notes that he stated he "'*will* blow up' a staff member's car," when a witness testified that he stated that he "*wished* he could blow her car three feet off of the ground." *Id.* at 4 (emphases added). He also argues that the termination letter inaccurately states that he "thr[ew] pens" rather than "threw *a* pen" in a meeting. *Id.* at 6 (emphasis added). Mr. McClure did not argue, and we fail to see, how this argument is relevant to the Board's analysis of his USERRA and whistleblower protection claims. Moreover, regardless of the exact wording, Mr. McClure fails to show that the general description of the incident in the termination letter is inaccurate. S. App'x 41.

Second, Mr. McClure argues that the Board erred by finding that he made a threat even though the VA Police Department never investigated, and the VA never notified the Office of Inspector General (OIG). Pet'r's Br. 14, 19. Similarly, Mr. McClure also contends that the Board erred in concluding that any witnesses at the VAMC meeting were truly intimidated by his conduct, given his status as a veteran with an alleged service-related disability. *Id.* at 8. These arguments also fail. Although Mr. McClure's conduct does not rise to the level of one requiring a police investigation or an investigation by the OIG, a lack of

investigation by these entities does not undermine the strength of the evidence supporting the termination. *See Final Order* at \*3–4. The Board credited Ms. Weir's testimony regarding Mr. McClure's conduct and rejected any argument that the testimony was fabricated or exaggerated. *Initial Decision* at 11. Other record evidence also consistently supports that the VA had a genuine concern for safety. *See, e.g.*, S. App'x 68–69; S. App'x 79; S. App'x 172–73. The Board's conclusions were supported by substantial evidence.

Mr. McClure's additional arguments that the Board erred in crediting certain witnesses' testimony are also unpersuasive. For example, Mr. McClure argues that Ms. Pope, Ms. Hill, Mr. Vazquez, Mr. Rupnick, and Mr. John Muther were not credible. Pet'r's Br. 8–12, 19, 24–25. He alleges that some of these witnesses were aware of Mr. McClure's protected disclosures and cannot be found credible. *See id.* at 19, 24–25. "Evaluation of witness credibility is within the discretion of the Board and in general, such evaluations are virtually unreviewable on appeal." *Hornseth v. Dep't of the Navy*, 916 F.3d 1369, 1376 (Fed. Cir. 2019) (cleaned up). Therefore, we will not disturb the administrative judge's credibility determination. *See, e.g., Initial Decision* at 10–11; *see also Final Order* at \*4 n.4.

To the extent Mr. McClure challenges the Board's finding that the agency officials did not have a strong motive to retaliate, *see* Pet'r's Br. 8–10, 24–25, the Board already considered and rejected this argument, and we see no error in the Board's analysis. *See Initial Decision* at 13–15 (finding Mr. McClure failed to adduce evidence of any knowledge of the disclosure by Ms. Pope, Ms. Weir, Mr. Vazquez, Mr. Muther, or Mr. Rupnick); *Final Order* at \*5 (finding Ms. Pope had no knowledge of the disclosure and no evidence that Ms. Hill had any influence over her). Mr. McClure contends that several emails show that the deciding official, Ms. Pope, had actual knowledge of Mr. McClure's protected disclosures, Pet'r's Br. 8–9, 24–25, but the emails

Mr. McClure cites do not mention the disclosures. S. App'x 62–69. Therefore, we reject Mr. McClure's argument and conclude that the Board's finding that the agency official did not have a strong motive to retaliate is supported by substantial evidence.

Finally, Mr. McClure argues that the Board failed to consider evidence that allegedly showed anti-military animus by several agency officials, including Ms. Pope and Mr. Vazquez. Pet'r's Br. 22. But the Board again considered and rejected such evidence. *See Initial Decision* at 6–11. The Board found there to be no evidence that any of the witnesses harbored anti-military animus against Mr. McClure. *See id.* at 9–11. The Board thus found that Mr. McClure's "uniformed service was not a substantial or motivating factor in his termination." *Id.* at 11; *Final Order* at \*7. Here too, the Board did not err, and we conclude substantial evidence supports its finding.

## III.    CONCLUSION

We have considered Mr. McClure's remaining arguments and find them unpersuasive. For the foregoing reasons, we *affirm* the Board's decision.

## AFFIRMED

### COSTS

No costs.