# United States Court of Appeals
# for the Federal Circuit

---

**JASON W. RUETER,**
*Petitioner*

**v.**

**DEPARTMENT OF COMMERCE,**
*Respondent*

---

2021-2216

---

Petition for review of the Merit Systems Protection Board in No. AT-0752-18-0388-I-2.

---

Decided: April 3, 2023

---

JOSEPH DAVID MAGRI, Merkle & Magri, PA, Tampa, FL, argued for petitioner.

GEOFFREY MARTIN LONG, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by BRIAN M. BOYNTON, CLAUDIA BURKE, PATRICIA M. MCCARTHY; CHRISTIANN BUREK, Office of the General Counsel, United States Department of Commerce, Washington, DC.

---

Before STOLL, BRYSON, and CUNNINGHAM, *Circuit Judges*.

STOLL, *Circuit Judge*.

The United States Department of Commerce, National Oceanic and Atmospheric Administration (NOAA), removed Jason Rueter for misconduct. Mr. Rueter appealed to the Merit Systems Protection Board, which affirmed his removal. Mr. Rueter now appeals to our court, alleging that the agency violated his due process rights by engaging in *ex parte* communications about his case. Because we conclude that none of the *ex parte* communications challenged by Mr. Rueter deprived him of due process, we affirm.

## BACKGROUND

Mr. Rueter worked as a fishery biologist for the NOAA's National Marine Fisheries Service under his supervisor, Dr. Stephania Bolden. *Rueter v. Dep't of Commerce*, No. AT-0752-18-0388-I-2, 2021 MSPB LEXIS 1721, at *1–2 (M.S.P.B. May 13, 2021) (*Board Decision*). In November 2014, two female employees of agency contractors informed Dr. Bolden of a troubling incident that had occurred at a Halloween costume party and a second incident the following morning. The women explained that on both occasions, Mr. Rueter engaged in inappropriate conduct directed at them. *Id.* at *2–3. In June 2015, another incident occurred involving Mr. Rueter, this time in the workplace. On that occasion, Mr. Rueter loudly yelled disrespectful accusations at Dr. Bolden in her office. *Id.* at *3, *26–28.

In November 2016, David Bernhart, Assistant Regional Administrator and Mr. Rueter's second-level supervisor, issued a letter to Mr. Rueter proposing that he be removed from his position for misconduct. J.A. 426–38. After receiving this letter, Mr. Rueter filed a complaint with the Office of Special Counsel (OSC). OSC requested that the agency stay Mr. Rueter's removal action, and the agency did so for several months.

In August 2017, Andrew Strelcheck, Deputy Regional Administrator and Mr. Rueter's third-level supervisor, informed Mr. Rueter that the agency was rescinding the first proposed removal letter. In September 2017, Mr. Bernhart issued a second notice of proposed removal, which contained two charges: (1) conduct unbecoming a federal employee and (2) disrespectful conduct toward a supervisor. J.A. 227–38. The notice explained in detail the specifications supporting each charge.

## A

### Conduct Unbecoming a Federal Employee

The first specification supporting the charge of conduct unbecoming a federal employee related to Mr. Rueter's conduct at the October 2014 Halloween party. In the proposal letter, as background to this first specification, Mr. Bernhart explained to Mr. Rueter:

> During that party, according to the statement of [JG],[1] you encountered [her] in a narrow hallway outside the bathroom. There, you told her she was a gorgeous woman. You cornered her in the hallway, blocking her exit to the rest of the house, while all the other party guests were outside and out of view. You then placed your hands on her shoulders, pinning her against the wall, and restraining her from leaving, despite her forceful demands to let her go. You told her, "I know you want this." In response, she yelled at you, "No, I don't," and again demanded that you let go of her. [JG] continued to try to get your hands off her shoulders and to escape from you, while telling you, "Jason, let go of me or I'm going to scream!" [JG] eventually was able to physically push you off of her and run out of

---

[1]    In an effort to protect the identity of involved third parties, we refer to them using only their initials.

the house, where she then gathered her friends and left the party.

J.A. 228.

The second specification supporting this charge related to Mr. Rueter's conduct the morning after the party, when he returned to the home of MP, who had hosted the event. As background to this second specification, Mr. Bernhart stated that:

> [A]ccording to the statement of [MP], you returned to her home in the morning. The night before, you left your car at [MP]'s house and were driven home by a friend. In the morning, [MP] texted you to ask you to move your car, which was blocking the car of her friend . . . . She subsequently texted you to say that [her friend] would borrow her car and it was therefore not urgent for you to come move your car. After a few minutes, you responded by text that you were on your way to [MP]'s house. She then called you, frustrated, to tell you verbally that she had already made other arrangements for [her friend] to use her car, but you insisted on coming over. At the end of the phone conversation, you told [MP] playfully that it was chilly outside and you would jump in bed with [her] when you got there, and she responded, "No, you won't." After the call, she texted you, "NO," and you responded, "LOL." Shortly afterward, you arrived at [MP]'s house, [her friend] let you in, and you went directly to [MP]'s bedroom. [MP] yelled out that she didn't have pants on and that you were not to come in. You nevertheless entered [MP]'s bedroom and lay down in the bed next to her. [MP] asked [her friend] to stand at the end of [MP's] bed so that you would not be tempted to do anything. You remained in [MP]'s bed for several minutes before leaving.

J.A. 229.

These events had negative workplace repercussions for both women.  As Mr. Bernhart explained to Mr. Rueter in the removal notice:

> Both directly-affected women told me personally that they had to change their behavior in the work-place when they needed to interact with you to en-sure that their interactions remained safe and/or professional.  Your encounter provoked such a strong fear reaction in one of your colleagues that she requested to work from home, which request management agreed to honor but which also neces-sitated negotiating a telework clause in a contract which previously had none.  In addition, one of the affected women still avoids encountering you and requires other employees to escort her to the park-ing lot, out of fear of encountering you.  Ultimately, both of the directly affected individuals have re-signed their positions[.]

J.A. 230.  The notice of proposed removal also attached JG's responses to certain questions the agency had asked her.  J.A. 336–39.  In this attachment, JG stated that as a result of Mr. Rueter's conduct, she "fe[lt] less safe" and had "taken steps to protect [her]self," such as "park[ing] far away from" Mr. Rueter and "mak[ing] sure [to] use a differ-ent entrance and exit from the building than Mr. Rueter," among other things.  J.A. 337.  JG also stated that "[t]he incident and lack of follow-up ha[d] severely affected [her] morale," and that the "length of time that ha[d] passed" since she reported Mr. Rueter's conduct "contribute[d] to [her] perception that voicing [her] concerns was not val-ued."  J.A. 338–39.

### Disrespectful Conduct Toward a Supervisor

The removal letter also included a charge for disre-spectful conduct toward a supervisor.  The first specifica-tion supporting this charge related to Mr. Rueter's conduct on the morning of June 26, 2015.  In the proposal letter,

Mr. Bernhart explained to Mr. Rueter that by 9:22 a.m., Dr. Bolden "had not received any communications indicating" that Mr. Rueter had started work for the day. J.A. 231.  Dr. Bolden sent an email to Mr. Rueter asking about his whereabouts.  Mr. Rueter "arrived at the office just before 10 a.m." and began "exhibit[ing] disrespectful commentary and tone towards Dr. Bolden." *Id.*  Specifically, Mr. Bernhart explained in the removal letter to Mr. Rueter that:

> When [Dr. Bolden] asked where you had been, in a raised voice you indicated that she was being ridiculous for asking you about these things and that you were tired of her hypocrisy as she had been AWOL.  You expressed more than once that you "were tired of it all" and yelled repeatedly for me to come and hear what you had to say.  Throughout this event, Dr. Bolden remained seated behind her desk and addressed you in a normal tone of voice. I happened to be in the vicinity when these events occurred and witnessed your yelling and aggressive behavior first-hand.  Your apparent degree of hostility (yelling, flushed skin, bulging veins) was so alarming to me that I broke off my work to come interpose myself between you and Dr. Bolden.

*Id.*  In the proposal letter, Mr. Bernhart noted that this conduct "was aggressive, hostile, and disrespectful and undermines management authority."  J.A. 232.[2]

---

[2]    The charge of disrespectful conduct was also supported by a second specification relating to Mr. Rueter's conduct in response to Dr. Bolden asking him why he was late to work.  The Board did not sustain this specification. Nevertheless, because the Board sustained the first specification under this charge, it ultimately sustained the

B

Based on these charges, Mr. Bernhart proposed that Mr. Rueter be removed from his position. In considering the appropriate penalty, Mr. Bernhart considered both mitigating and extenuating circumstances. As part of this consideration, Mr. Bernhart noted that Mr. Rueter had previously been disciplined for (1) "confrontational, loud, and embarrassing behavior directed towards a senior [] management official"; and (2) "contacting a coworker and asking her to have sexual relations with [him] and [his] girlfriend, while on official travel." J.A. 235. After the latter incident, Mr. Rueter had been placed on a 14-day suspension. In part because of the repeated, similar nature of Mr. Rueter's conduct, Mr. Bernhart explained that removal was, in his view, the appropriate penalty.

In response to the removal letter, Mr. Rueter provided both written and oral replies. Mr. Rueter claimed that his removal was retaliation for complaints he had made regarding Dr. Bolden, including that she had committed "terrible management abuse" and created "a hostile work environment." J.A. 216–17. Mr. Strelcheck sustained each of the charges in the proposal and agreed that removal was the appropriate penalty. Mr. Rueter was accordingly removed from his position.

Mr. Rueter appealed to the Board. Before the hearing, the Administrative Judge (AJ) made two procedural rulings that are relevant on appeal. First, the AJ denied Mr. Rueter's motion seeking *in camera* review of certain documents that the agency had partially or wholly withheld based on the attorney-client and attorney work product privileges. Second, the AJ denied Mr. Rueter's request

---

charge. The second specification is not at issue on appeal, and we do not address it further.

to have Bob Hoffman, a Department of Commerce employee, testify at the hearing.

The AJ issued an initial decision affirming Mr. Rueter's removal, sustaining both charges and finding both that the agency had established a sufficient nexus between the charges and the efficiency of the service and that removal was a reasonable penalty. In its decision, the AJ addressed—and ultimately found unpersuasive—each of Mr. Rueter's affirmative defenses. Among other things, Mr. Reuter had alleged that the agency violated his right to due process by engaging in improper *ex parte* communications. Mr. Rueter pointed to five communications that he asserted were constitutionally improper. The AJ explained that these communications did not deprive Mr. Rueter of due process because each either contained only cumulative information or was not of the type likely to result in undue pressure on the deciding official. In other words, the AJ determined that each of the communications did not rise to the level of an improper *ex parte* communication under the relevant law. No party petitioned the Board for review, and the AJ's initial decision became the final Board decision.

Mr. Rueter appeals. We have jurisdiction under 5 U.S.C. § 7703(b)(1)(A) and 28 U.S.C. § 1295(a)(9).

DISCUSSION

Our review in an appeal from the Board is limited. We must affirm a decision of the Board unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Hornseth v. Dep't of the Navy*, 916 F.3d 1369, 1373 (Fed. Cir. 2019). We review the Board's factual findings regarding an employee's affirmative defenses, e.g., whether the information contained in an alleged *ex parte* communication was already known to the

employee or was cumulative, for substantial evidence. *Hornseth*, 916 F.3d at 1376. Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Simpson v. Off. of Pers. Mgmt.*, 347 F.3d 1361, 1364 (Fed. Cir. 2003). On the other hand, "[p]rocedural matters relative to discovery and evidentiary issues fall within the sound discretion of the [B]oard." *Curtin v. Off. of Pers. Mgmt.*, 846 F.2d 1373, 1378 (Fed. Cir. 1988). We "will not overturn the [B]oard on such matters unless an abuse of discretion is clear and is harmful." *Id.*

On appeal, Mr. Rueter argues, as he did before the Board, that the agency engaged in improper *ex parte* communications. In addition, Mr. Rueter argues that the Board erred by excluding the testimony of Mr. Hoffman and by denying Mr. Rueter's motion requesting *in camera* inspection of certain documents over which the agency asserted privilege. We address each issue in turn.

I

First, we turn to Mr. Rueter's argument that the agency engaged in certain communications that were improper *ex parte* communications depriving him of due process. Appellant's Br. 15–20. Although Mr. Rueter identified five allegedly improper communications before the Board, he identifies only three such communications on appeal: (1) a March 9, 2017 email from Dr. Bolden to agency managers, including Mr. Strelcheck and Mr. Bernhart, in which she writes that an agency-wide email regarding sexual harassment policies was a "hollow gesture" given the lack of action taken at that point regarding Mr. Rueter; (2) two emails between Mr. Strelcheck and Mr. Bernhart in which they discuss the status of the removal process and the issuance of the second removal proposal letter; and (3) a November 10, 2016 email in which

Mr. Bernhart sent a timeline of relevant events to Mr. Strelcheck.[3]

The Constitution guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V.  Accordingly, before a federal employee can be lawfully removed from his position, due process requires that he be given notice both of the charges against him and the agency's evidence as well as an opportunity to respond. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  Thus, "[t]he introduction of new and material information via *ex parte* communication to a deciding official deprives an employee" of

---

[3]    Before the Board, Mr. Rueter identified two additional allegedly problematic communications:  (1) a February 2, 2017 email in which Mr. Bernhart reminded Mr. Strelcheck of the OSC policy statement regarding stays and suggested that Mr. Strelcheck set an expiration date for the then-active stay of the first proposed removal letter; and (2) in-person meetings in late 2015 and early 2016 between Mr. Strelcheck and JG and MP, in which the women inquired about the status of the proceedings against Mr. Rueter.  Mr. Rueter did not discuss these communications in his opening brief or at oral argument. *See* Appellant's Br. 15–20 (relevant argument section not citing directly to either communication and referring once only briefly to the latter communication); Oral Arg. at 26:28–30:57, https://oralarguments.cafc.uscourts.gov/default.aspx?fl=21-2216_11022022.mp3 (counsel listing each of the challenged communications, which specifically do not include either of these).  Accordingly, he has forfeited any argument regarding these communications. *See Rodriguez v. Dep't of Veterans Affs.*, 8 F.4th 1290, 1305 (Fed. Cir. 2021) ("An issue that is merely alluded to and not developed as an argument in a party's brief is deemed" forfeited.).

the guarantee of due process. *Hornseth*, 916 F.3d at 1375 (citing *Stone v. Fed. Deposit Ins. Corp.*, 179 F.3d 1368, 1376 (Fed. Cir. 1999)).

In *Stone*, we explained that while certain *ex parte* communications can undermine due process, not every *ex parte* communication is constitutionally impermissible. 179 F.3d at 1376–77. Only those "*ex parte* communications that introduce new and material information to the deciding official will violate the due process guarantee of notice." *Id.* at 1377. In considering whether information is "new and material" such that it violates due process, we consider the facts and circumstances of each case, and the test is an objective one. *Id.* Among the factors we weigh are: (1) "whether the *ex parte* communication merely introduces 'cumulative' information or new information"; (2) "whether the employee knew of the error and had a chance to respond to it"; and (3) "whether the *ex parte* communications were of the type likely to result in undue pressure upon the deciding official to rule in a particular manner." *Id.* The ultimate "inquiry is 'whether the *ex parte* communication is so substantial and so likely to cause prejudice that no employee can be fairly required to be subjected to a deprivation of property under such circumstances.'" *Hornseth*, 916 F.3d at 1375 (quoting *Stone*, 179 F.3d at 1377). Said otherwise, "[t]he concept of procedural fairness is the ultimate focus of the *Stone* inquiry." *Boss v. Dep't of Homeland Sec.*, 908 F.3d 1278, 1282 (Fed. Cir. 2018).

For example, we found that *ex parte* communications violated an employee's right to due process in *Sullivan v. Department of the Navy*, 720 F.2d 1266 (Fed. Cir. 1983). The employee in *Sullivan* accused Captain Westbrock, the head of his agency, of violating certain regulations. *Id.* at 1268. In response, Captain Westbrock organized several Naval Investigative Service employees to surveil Mr. Sullivan and detect any timekeeping discrepancies. *Id.* When he determined he had collected enough evidence

to discipline Mr. Sullivan, Captain Westbrock sent a letter to the deciding official recommending Mr. Sullivan's removal. *Id.* at 1268–69. Captain Westbrock then called the official's assistant multiple times asking the official to "hurry up" the decision and stating that Mr. Sullivan "should be removed." *Id.* at 1269–70. He even sent the deciding official a map showing where the employees he asked to surveil Mr. Sullivan were stationed. *Id.* at 1270. We held that these "improper *ex parte* communications were not only unfair, but also denied petitioner his rights under the due process clause of the Constitution." *Id.* at 1274.

We held similarly in the recent case *Johnson v. Department of the Air Force*, 50 F.4th 110 (Fed. Cir. 2022). In that case, the Air Force fired Mr. Johnson because he failed a random drug test. *Id.* at 113. Mr. Johnson explained that he believed "he had accidentally taken one of his mother's pills instead of his own prescribed medication." *Id.* During the removal proceedings, the deciding officer, Lieutenant Colonel Fletcher, mentioned that "he had spoken to two family members about Mr. Johnson's case," including his wife and his brother-in-law. *Id.* at 114. During these *ex parte* communications, both family members (who were medical professionals) informed Lieutenant Colonel Fletcher that "the possibility that Mr. Johnson accidentally took his mother's pill was 'slim to none.'" *Id.* at 115. Lieutenant Colonel Fletcher "made clear that the communications at issue were material, bearing on the central issue of whether to credit Mr. Johnson's explanation." *Id.* at 116. We concluded that these communications were impermissible under *Stone* both because they "provid[ed] new opinions on the evidence" and because they were admittedly material to the deciding official's determination. *Id.* at 116–17.

In contrast, we held that *ex parte* communications did not deprive an employee of due process in *Blank v. Department of the Army*, 247 F.3d 1225 (Fed. Cir. 2001). There,

the deciding official "interviewed a number of agency employees" regarding the circumstances of Mr. Blank's removal and the validity of his affirmative defenses. *Id.* at 1227. Mr. Blank was not present during these interviews. *Id.* The Board found that although these interviews were *ex parte* communications, they were not improper under *Stone* because, among other things, "the information obtained from the interviews was merely cumulative of the documentary evidence already assembled" and "the interviews were unlikely to result in undue pressure on the [deciding official] to rule in any particular manner." *Id.* at 1229. We affirmed the Board's findings, stating that these interviews were conducted "merely to confirm and clarify information that was already contained in the record" and therefore did not deprive Mr. Blank of due process. *Id.*

We similarly affirmed the Board's finding that certain *ex parte* communications were not improper in *Hornseth*, 916 F.3d 1369. In *Hornseth*, the deciding official emailed Mr. Hornseth's Human Resources (HR) department regarding the arguments contained in Mr. Hornseth's response to his removal letter. *Id.* at 1371–72. HR then ultimately drafted the removal decision letter. *Id.* at 1372. The deciding official testified that although the email happened without Mr. Hornseth's knowledge, he had reached out to HR only "to clarify the arguments raised in [Mr. Hornseth's] reply." *Id.* at 1375. He further testified that HR drafted the removal letter "after he had made his decision." *Id.* at 1376. We affirmed the Board's findings that these communications did not deprive Mr. Hornseth of due process, because the information contained in the communication "was already known to [Mr.] Hornseth or [was] cumulative." *Id.*

With this legal framework in mind, we now turn to the three communications Mr. Rueter challenges on appeal.

A

The first allegedly improper *ex parte* communication identified by Mr. Rueter is an email from Dr. Bolden sent to Mr. Strelcheck, Mr. Bernhart, and other agency managers on March 9, 2017.[4] J.A. 1635.  In the email, Dr. Bolden responded to an agency-wide announcement regarding sexual harassment policies, criticizing the announcement as a "hollow gesture" in light of "the lack of agency action" regarding Mr. Rueter.  *Id.*  Dr. Bolden also encouraged the recipients to "follow through and take action on the pending harassment matter," but did not recommend any specific action.  *Id.*

In considering this email, the AJ applied the *Stone* factors and determined that it was not an inappropriate *ex parte* communication.  The AJ supported his decision by citing to the evidence that (1) Mr. Strelcheck and

---

[4]    In his reply brief and at oral argument, Mr. Rueter also appeared to identify hearing testimony by Dr. Bolden that she met with Mr. Strelcheck multiple times throughout her employment.  *See* Appellant's Reply Br. 3–4 (citing J.A. 2086); Oral Arg. at 26:28–30:27 (listing, as a challenged communication, Dr. Bolden's testimony at J.A. 2086).  To the extent Mr. Rueter intends to separately challenge these meetings as improper *ex parte* communications, he has forfeited this argument by not raising it before the Board.  *See Board Decision*, 2021 MSPB LEXIS 1721, at *88–104 (discussing each challenged communication); *Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule . . . that a federal appellate court does not consider an issue not passed on below.").  Furthermore, Mr. Rueter has doubly forfeited it by not raising it until his reply brief. *McIntosh v. Dep't of Defense*, 53 F.4th 630, 641 (Fed. Cir. 2022) ("Our law is well established that arguments not raised in the opening brief are forfeited.") (cleaned up).  We thus do not separately discuss this testimony.

Mr. Bernhart both testified that they agreed with Dr. Bolden that the matter had been pending for too long; (2) Mr. Strelcheck further testified that the email had no effect on his decision to sustain the proposal to remove Mr. Rueter; and (3) the relationship between Dr. Bolden and Mr. Strelcheck and Mr. Bernhart was such that the email from Dr. Bolden could not have exerted undue pressure on either individual. *Board Decision*, 2021 MSPB LEXIS 1721, at *89–93. In other words, the AJ found that although this email occurred without notice to Mr. Rueter, it did not communicate new and material information— Mr. Strelcheck and Mr. Bernhart already knew of the lengthy pending investigation against Mr. Rueter and agreed with Dr. Bolden that proceedings were dragging on. And, the AJ found, the email did not exert undue pressure upon the deciding officials, in large part because those officials were Dr. Bolden's supervisors, not her subordinates. *Id.* at *93. Based on these findings, the AJ determined that this email did not violate Mr. Rueter's due process rights.

We conclude that the Board properly relied on the factors set forth in *Stone*, and that its findings are supported by substantial evidence. Unlike the supervisor in *Sullivan* whose conduct deprived the employee of due process, here, Dr. Bolden did not specifically request that Mr. Rueter be removed, nor did she repeatedly contact the deciding officials to push them to decide. Instead, this email from Dr. Bolden recommended only that some action be taken on the long-pending investigation against Mr. Rueter, a statement that confirmed what Mr. Strelcheck and Mr. Bernhart already knew. Said otherwise, Dr. Bolden's email did not provide any new and material information to the deciding officials. Accordingly, like the email in *Hornseth* and the interviews in *Blank*, both of which provided only confirmatory, cumulative information, Dr. Bolden's email similarly did not deprive Mr. Rueter of due process.

Further, as the AJ properly noted, Dr. Bolden was Mr. Strelcheck's and Mr. Bernhart's subordinate, not their supervisor. The AJ accordingly reasonably found that it was unlikely "that either Mr. Strelcheck or Mr. Bernhart sought to appease [Dr.] Bolden, who . . . had no authority over them." *Board Decision*, 2021 MSPB LEXIS 1721, at *93. This relationship between Dr. Bolden and the deciding official stands in contrast to the circumstances in *Johnson*, where we determined the *ex parte* communications were improper. In *Johnson*, the deciding official testified that his wife, with whom he communicated without notice to Mr. Johnson, was his "number one advisor." 50 F.4th at 115–16. Likewise, in *Sullivan*, Captain Westbrock, the head of the agency, applied consistent pressure on the deciding official to remove Mr. Sullivan. 720 F.2d at 1269–71. The circumstances are fundamentally different here, where Dr. Bolden, a subordinate, sent an email to her supervisors requesting only that some non-specified action be taken and providing no new or material information.

Because substantial evidence demonstrates that this communication neither provided new or material information nor was of the type likely to exert undue pressure on the deciding official, we affirm the AJ's determination that this communication did not deprive Mr. Rueter of due process.[5]

---

[5]    At oral argument, when asked what Mr. Rueter would have done differently had he been aware of Dr. Bolden's email, Mr. Rueter's counsel responded that Mr. Rueter would have "litigate[d] the propriety of" Dr. Bolden's claim that she was "the victim of sexual harassment." Oral Arg. at 11:52–13:10. The record does not indicate that Dr. Bolden ever claimed she was the victim of sexual harassment; instead, the specifications related to Dr. Bolden concern Mr. Rueter's disrespectful workplace

B

We turn now to the second communication that Mr. Rueter alleges deprived him of due process: two emails between Mr. Strelcheck and Mr. Bernhart in which they discuss the status of the removal process and the issuance of the second removal proposal letter. J.A. 1868. In the first email, Mr. Bernhart told Mr. Strelcheck that he was attaching Dr. Bolden's comments on a performance plan. *Id.* Mr. Bernhart wrote that Dr. Bolden's comments reflect that she perceives herself to be "the victim in the narrative" and that he expected there to be "some risk of further complaints from" Dr. Bolden regarding the pending action against Mr. Rueter. *Id.* Mr. Bernhart then asked for Mr. Strelcheck's advice regarding whether further documentation should be prepared and proposed a discussion regarding "next steps on resolving things with OSC," referencing the then-pending investigation started in response to Mr. Rueter's letter. *Id.* In reply, Mr. Strelcheck advised Mr. Bernhart to contact HR regarding Dr. Bolden's potentially biased comments. He also stated generally that he had contacted OSC regarding the pending investigation and would continue to do so "to move this forward." *Id.*

Before the Board, Mr. Rueter alleged that these emails reflected that Mr. Strelcheck and Mr. Bernhart "collaborated on the drafting of the new proposal or attempted to 'carve out' certain allegations in order to avoid an allegation of whistleblowing." *Board Decision*, 2021 MSPB LEXIS 1721, at *93–94. The AJ found that the record did

conduct. *See Board Decision*, 2021 MSPB LEXIS 1721, at *25–44. Accordingly, it is unclear to us what Mr. Rueter could or would have done differently had he been aware of Dr. Bolden's email. In any event, for the reasons explained in this decision, we affirm the Board's determination that this communication did not deprive Mr. Rueter of due process.

not support those allegations, finding instead that Mr. Rueter "has not identified specific communications in which the two engaged in a conversation about specific charges and specifications that were to be included in the proposal." *Id.* at *94. The AJ also noted that both Mr. Strelcheck and Mr. Bernhart testified that they did not engage in any such collaboration regarding the second proposal notice. *Id.* Because Mr. Rueter did not demonstrate how these emails improperly impacted his case, the AJ thus determined that they did not deprive Mr. Rueter of due process.

On appeal, Mr. Rueter phrases his argument regarding these emails somewhat differently, asserting instead more generally that all communications between Mr. Bernhart and Mr. Strelcheck, including both these emails and another email discussed further below, show that Mr. Bernhart "attempted to influence [Mr.] Strelcheck . . . into taking action against" Mr. Rueter. Appellant's Br. 17–18; *see also id.* at 6 (citing J.A. 1868) (describing these two emails as being "about [Mr. Rueter], the proposed disciplinary action, and the OSC stay"). We disagree.

Application of the *Stone* factors to the communications between Mr. Bernhart and Mr. Strelcheck confirms the Board's conclusion that these are not improper *ex parte* communications. First, as the AJ reasonably found, these emails "merely introduce[d] 'cumulative' information." *Stone*, 179 F.3d at 1377. Indeed, a fair reading of these emails reflects that they appear to be perfunctory, administrative messages, asking about next steps and the status of the proceedings against Mr. Rueter. For example, Mr. Bernhart notes that Dr. Bolden's notes regarding Mr. Rueter may be biased due to their strained relationship and the lengthy investigation. Neither the fact that Dr. Bolden's relationship with Mr. Rueter had soured, nor the length of time the investigation was pending, were new facts provided to Mr. Strelcheck. The remainder of the emails' contents are Mr. Bernhart seeking, and

Mr. Strelcheck providing, general advice regarding the status of the OSC investigation.  Again, no new or material information was provided to (or, indeed, from) the deciding official.  For example, Mr. Strelcheck counseled Mr. Bernhart to reach out to HR for advice regarding the OSC investigation.  Such a suggestion is not an improper *ex parte* communication, just as the email to HR seeking advice regarding an employee's arguments was not improper in *Hornseth*.  *See* 916 F.3d at 1375–76.

Second, these emails are not "of the type likely to result in undue pressure upon the deciding official to rule in a particular manner." *Stone*, 179 F.3d at 1377.  These emails do not contain, for example, a demand from Mr. Bernhart to remove Mr. Rueter or any indication from Mr. Strelcheck that he felt undue pressure to do so.  Instead, Mr. Bernhart notes only that there was "some risk of further complaints from" Dr. Bolden.  J.A. 1868.  But in view of the evidence, that statement cannot reasonably be interpreted to have caused undue pressure on Mr. Strelcheck.  There are no details regarding this "risk," Mr. Strelcheck does not express any concern in his response, and, as we mentioned above, Dr. Bolden was Mr. Strelcheck's and Mr. Bernhart's subordinate and had no authority over them.  *Cf. Johnson*, 50 F.4th at 115–16 (determining *ex parte* communications were improper where the deciding official received admittedly material information from his wife, whom he referred to as his "number one advisor"); *see also Sullivan*, 720 F.2d at 1269–71 (concluding *ex parte* communications were impermissible where the head of the agency repeatedly pressured the deciding official to remove the employee).  In this case, Mr. Rueter has not identified any portion of these communications suggesting that undue pressure was exerted on Mr. Strelcheck to rule in a particular manner, and we do not see any.  In other words, these are not the "unfair" *ex parte* communications in *Sullivan*, 720 F.2d at 1274, nor the material communications from close family members

in *Johnson*, 50 F.4th at 115.  Instead, these are merely administrative emails between Mr. Bernhart and Mr. Strelcheck regarding the status of and documentation regarding the proceedings involving Mr. Rueter.

Because these communications do not provide any new and material evidence nor apply undue pressure on the deciding official to remove Mr. Rueter, we accordingly affirm the Board's determination that these communications do not deprive Mr. Rueter of due process.

C

Next, we address the third allegedly impermissible *ex parte* communication, an email in which Mr. Bernhart sent a timeline of events bearing on Mr. Rueter's case to Mr. Strelcheck.  J.A. 1671.  In this email, sent November 10, 2016—a few days after he presented Mr. Rueter with the first removal proposal letter—Mr. Bernhart provided Mr. Strelcheck with a "boiled down version" of the major details of events regarding Mr. Rueter's removal proceedings and his filing of a letter with the OSC.  *Id.*  The email lists the dates that certain events happened, e.g., when Dr. Bolden initially reported Mr. Rueter's conduct, when the first removal letter was drafted, when certain contacts were made with the OSC, and when Mr. Bernhart presented the proposed removal package to Mr. Rueter, among many other dates.  Mr. Bernhart offered to send an even further detailed outline, noting that he did not "think there's anything in there that you haven't been aware of or isn't included in the full discipline package you now have." *Id.*

On appeal, Mr. Rueter argues that this email shows that Dr. Bolden and Mr. Bernhart "attempted to influence [Mr.] Strelcheck . . . into taking action against" Mr. Rueter. Appellant's Br. 17–18.  We do not agree and determine that substantial evidence supports the Board's finding to the contrary.

This email simply provided a timeline of events to Mr. Strelcheck. Mr. Rueter does not identify on appeal any information provided in the timeline that Mr. Strelcheck would not have already known. In other words, although the timeline conveniently streamlines the dates on which relevant events occurred, the timeline does not provide new and material information to Mr. Strelcheck. Indeed, Mr. Bernhart confirmed as much in the email itself, writing that even a *more* detailed timeline of events that he offered to send to Mr. Strelcheck would not have included any facts that "you haven't been aware of or isn't included in the full discipline package you now have." J.A. 1671. We have repeatedly held that the provision of merely confirmatory or cumulative information does not violate due process. *See Blank*, 247 F.3d at 1229 (holding that interviews conducted "merely to confirm and clarify information that was already contained in the record" did not deprive the employee of due process); *Hornseth*, 916 F.3d at 1376 (holding that communications containing information that "was already known to [Mr.] Hornseth or [was] cumulative" was not constitutionally impermissible). Just as with the confirmatory communications in *Blank* and *Hornseth*, the timeline at issue here merely repeated known information in a different format. That is not a violation of due process.

Accordingly, we affirm the Board's conclusion that this communication did not deprive Mr. Rueter of due process.

\*   \*   \*

In sum, none of the communications challenged by Mr. Rueter rise to the level of a due process violation. A thorough consideration of the record in view of the *Stone* factors reveals that for each challenged communication, the Board reasonably found either no new and material information was provided to the deciding officer, or the communications were not of the type likely to result in undue pressure on that officer, or both. *See Stone*, 179 F.3d at 1377. We thus affirm the Board's decision on this issue.

II

Having determined that none of the challenged communications are constitutionally impermissible, we turn now to Mr. Rueter's remaining arguments. First, Mr. Rueter contends that the Board improperly denied his request to have Mr. Hoffman testify at the removal hearing on his behalf. Appellant's Br. 20–22. Specifically, Mr. Rueter argues that he should have been allowed to present testimony from Mr. Hoffman, who would have testified that he was willing to hire Mr. Rueter to work in his own branch of the NOAA but Mr. Bernhart declined the reassignment. *Id.* at 21 (citing J.A. 1940–42, 1949).

Procedural matters regarding discovery and evidentiary issues "fall within the sound discretion of the [B]oard and its officials." *Curtin*, 846 F.2d at 1378 (citing *Spezzaferro v. FAA*, 807 F.2d 169, 173 (Fed. Cir. 1986)). We will not overturn the Board's determinations on such issues "unless an abuse of discretion is clear and is harmful." *Id.* If a petitioner alleges an abuse of discretion occurred, in order to prevail, "he must prove that the error caused substantial harm or prejudice to his rights which could have affected the outcome of the case." *Id.* at 1379; *see also* 5 U.S.C. § 7701(c)(2)(A).

Before the Board, Mr. Rueter argued that Mr. Hoffman's testimony was relevant only to his affirmative defenses, specifically his whistleblower defense. *See* J.A. 948–49, 1941–42. The AJ ultimately excluded that testimony on the basis of relevance. J.A. 1928. On appeal, Mr. Rueter now argues that the testimony would somehow have been relevant to the AJ's *Stone* factor analysis regarding the *ex parte* communications. *See* Appellant's Br. 22. As an initial matter, we note that Mr. Rueter never made this relevance argument to the Board. Instead, Mr. Rueter proffered this testimony only as relevant to his affirmative defenses and as character evidence regarding Mr. Bernhart. *See* J.A. 1942 (Mr. Rueter arguing that the

"testimony . . . is clearly relevant to the issue of [Mr.] Bernhart's intent and his hostility toward [Mr. Rueter's alleged protected] activity").

Even if not forfeited, Mr. Rueter's arguments regarding this issue are unconvincing. Specifically, Mr. Rueter argues that because the Board discussed Mr. Strelcheck's "self-serving testimony and subjective opinion," Mr. Rueter "was entitled to introduce witness testimony calling into question [Mr.] Strelcheck's credibility and bias." Appellant's Br. 22. First, we note that there is nothing improper about the Board considering the subjective testimony of Mr. Strelcheck and Mr. Bernhart. *See, e.g.*, *Hornseth*, 916 F.3d at 1375–76 (affirming the Board where it, as part of its *Stone* analysis, "credited Combs's testimony that his *ex parte* contacts were to clarify the arguments raised"); *cf. Johnson*, 50 F.4th at 116 (noting, as part of the *Stone* analysis, Lieutenant Colonel Fletcher's subjective perception that "the communications at issue were material" and his testimony that his wife was his "number one advisor").

Second, Mr. Rueter has not explained why Mr. Hoffman's testimony—that he would have hired Mr. Rueter but Mr. Bernhart declined the reassignment—would have been relevant to the issue of *ex parte* communications and, specifically, Mr. Strelcheck's credibility. Mr. Rueter states, without evidentiary support or further argument, that Mr. Hoffman's "testimony would support the inference that [Mr.] Bernhart's actions stemmed from his hostility toward" Mr. Rueter and that it is relevant "to the issue of [Mr.] Bernhart's attempted influence over [Mr.] Strelcheck's decision-making processes." Appellant's Br. 22. Although such inferences and testimony may have been relevant to Mr. Rueter's whistleblower defense, Mr. Rueter has not demonstrated why the Board abused its discretion in determining this testimony would not be relevant to the issue of whether Mr. Strelcheck engaged in improper *ex parte* communications. Furthermore, Mr. Rueter does not even address whether and how he was harmed or

prejudiced by the exclusion of Mr. Hoffman's testimony, nor how such exclusion affected the outcome of the case, as is required to show an abuse of discretion regarding discovery matters. *See Curtin*, 846 F.2d at 1379; 5 U.S.C. § 7701(c)(2)(A). Based on this record, we decline to conclude that the Board abused its discretion in resolving this evidentiary matter.

Finally, we address Mr. Rueter's argument that the Board erred in denying his motion for *in camera* inspection of certain documents the agency alleged were privileged. Appellant's Br. 22–23. Specifically, Mr. Rueter argues that the agency improperly asserted the attorney-client privilege and attorney work product protection over certain documents sent between two non-attorneys, namely several emails sent between Mr. Bernhart and Mr. Strelcheck. *Id.* Mr. Rueter does not set forth his argument in his appellate briefing, instead noting that the "basis for the motion is laid out" in the appendix "and will not be repeated here." *Id.* at 22. His brief argumentation on the issue then merely summarizes the objections contained in his filings before the Board.

Accordingly, Mr. Rueter has forfeited his argument regarding this issue by not properly presenting it on appeal. We have explained that, "[u]nder the Federal Rules of Appellate Procedure, arguments may not be properly raised by incorporating them by reference from the appendix rather than discussing them in the brief." *Graphic Controls Corp. v. Utah Med. Prods., Inc.*, 149 F.3d 1382, 1385 (Fed. Cir. 1998) (citing FED. R. APP. P. 28(a)(8)(A)); *see also Monsanto Co. v. Scruggs*, 459 F.3d 1328, 1335 (Fed. Cir. 2006) (holding that arguments "incorporate[d] by reference" are "a violation" of the Federal Rules of Appellate Procedure and are deemed forfeited). In this case, by attempting to incorporate his appellate arguments by referencing portions of the appendix, Mr. Rueter has forfeited those arguments.

In any event, even were this argument not forfeited, we do not see how the Board abused its discretion by denying Mr. Rueter's discovery motion. As we explained above, "procedural matters relative to discovery and evidentiary issues fall within the sound discretion of the [B]oard and its officials." *Curtin*, 846 F.2d at 1378. Here, Mr. Rueter argues that the Board should have undertaken an *in camera* review of certain documents withheld by the agency on the basis of either the attorney-client privilege or attorney work product protection. Mr. Rueter does not identify which documents he specifically challenges, but there are several entries in the agency's privilege log identifying communications between Mr. Bernhart and Mr. Strelcheck as privileged. *See* J.A. 594–610 (identifying five documents as communications between only those two individuals).

We are not convinced that the Board abused its discretion by denying Mr. Rueter's request to undertake an *in camera* review of these documents to confirm whether they were properly withheld. It is well established that communications between non-attorneys within an agency may be protected by the attorney-client privilege provided those communications transmit legal advice provided by an attorney. *See, e.g.*, PAUL R. RICE, ATTORNEY-CLIENT PRIVILEGE IN THE UNITED STATES § 5:7 (2022) (collecting cases); *see also, e.g.*, *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 611 (8th Cir. 1977); *United States v. ChevronTexaco Corp.*, 241 F. Supp. 2d 1065, 1077 (N.D. Cal. 2002) (stating the attorney-client privilege attaches to communications between nonlawyer employees where "the employees discuss or transmit legal advice given by counsel"); *Evans v. Atwood*, 177 F.R.D. 1, 6 (D.D.C. 1997) ("[C]irculating truly confidential information among concerned officials does not defeat the privilege since all the recipients shared the attorney-client privilege with each other.").

In this case, each communication listed between Mr. Bernhart and Mr. Strelcheck without including an attorney is described as containing legal advice. *See* J.A. 601

(DOC 32186 described as "discussing OGC's legal advice regarding discipline issue"); J.A. 603 (DOC 32288 described as "containing OGC's legal advice" and DOC 32316 described as "containing OGC's legal advice regarding disciplinary proposal"); J.A. 608 (DOC 33019 described as "containing OGC's legal advice regarding [performance improvement plan] and disciplinary action" and "confidential settlement discussions"); J.A. 610 (DOC 33204 described as "containing legal advice regarding telework"). Accordingly, it appears, at least on the face of the privilege log, that the agency did not inappropriately assert privilege over these documents. Mr. Rueter's limited argument on this issue does not explain how the Board abused its sound discretion in determining that *in camera* review of these documents was unnecessary. We decline to conclude that the Board abused its discretion under these circumstances.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. The Board appropriately determined that none of the challenged *ex parte* communications deprived Mr. Rueter of due process. We also see no error in the Board's denial of Mr. Rueter's motions to allow Mr. Hoffman to testify and for *in camera* inspection of certain privileged documents. For the above reasons, we thus affirm the Board's decision.

**AFFIRMED**