NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**JWYANZA REED,**
*Petitioner*

**v.**

**DEPARTMENT OF HEALTH AND HUMAN SERVICES,**
*Respondent*

_____

2024-1620

_____

Petition for review of the Merit Systems Protection Board in No. DC-1221-21-0222-W-3.

_____

Decided: January 8, 2025

_____

JWYANZA REED, Greenbelt, MD, pro se.

ALEXANDER BREWER, Civil Division, Commercial Litigation Branch, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY.

_____

Before DYK, REYNA, and STOLL, *Circuit Judges*.

PER CURIAM.

Jwyanza Reed petitions pro se from a decision of the Merit Systems Protection Board ("Board") sustaining an action of the U.S. Department of Health and Human Services ("HHS") requiring Ms. Reed to take leave without pay because she delayed signing a telework agreement. We *affirm*.

## BACKGROUND

In September 2019, Ms. Reed began working for HHS as an Attorney Advisor in the agency's Office of Medicare Hearings and Appeals Arlington Field Office. Her appointment was in the excepted service and subject to a two-year probationary period. Her position was covered by a collective bargaining agreement between HHS and the National Treasury Employees Union ("NTEU").

Before the COVID-19 pandemic, HHS maintained a telework policy that allowed Attorney Advisors to work remotely after 90 days of satisfactory performance. To participate, an Attorney Advisor was required to enter into a written telework agreement. Ms. Reed did not participate in the program before March 2020.

On March 10, 2020, in light of evolving workplace safety guidance from the Office of Personnel Management ("OPM") on the emergence of the COVID-19 pandemic, Ms. Reed's immediate supervisor, Administrative Law Judge ("ALJ") Kenneth Luciano, informed her that his team would likely need to work remotely, and he encouraged Ms. Reed to complete a telework agreement. Later that day, Program Analyst Michelle Turner emailed Ms. Reed, asking her to complete a telework agreement and the associated training by the next day.

On March 11, 2020, Ms. Reed responded to Ms. Turner, stating that she "was not interested in teleworking" at that

time. S. App'x 20.[1]  That afternoon, ALJ Luciano informed his team by email that they were required to bring home their laptops each day in case the agency transitioned to remote work and warned that employees who failed to bring home their computers would be required to take "annual leave . . . for the time the person is without the laptop." S. App'x 21.

That same afternoon, Carlton Drew, Director of the Arlington Field Office, contacted Ms. Reed, inquiring about the status of her telework agreement.  Ms. Reed responded that under the NTEU collective bargaining agreement with HHS, "participation in the telework program is voluntary," and that an employee could not telework without first certifying that he or she possessed the requisite equipment and infrastructure to complete his or her duties from home. S. App'x 21–22.  Ms. Reed further explained that she had "not signed a telework agreement with [her] current supervisor," and that she believed it would be "highly irresponsible for [her] to certify that [she had] the infrastructure to work from home." S. App'x 22.

On March 17, 2020, HHS mandated remote work for all employees.  Observing that Ms. Reed had not yet returned a completed telework agreement, ALJ Luciano told her that she was required to use leave time until she completed the required agreement and training.  Ms. Reed did not complete the paperwork until March 20, 2020.

On March 25, 2020, Ms. Reed returned to work and submitted a request for leave without pay for the period of March 17, 2020, to March 24, 2020.  ALJ Luciano granted the request.  For several months thereafter, ALJ Luciano expressed concerns with Ms. Reed's performance.  On September 25, 2020, he sent Ms. Reed a letter notifying her

---

[1]    Citations to "S. App'x" are to the supplemental appendix filed by the government.

that her employment was terminated effective that day. The letter explained that Ms. Reed's termination was due in part to her failure to timely complete her telework agreement.

Following her termination, Ms. Reed filed a complaint of whistleblower reprisal with the Office of Special Counsel. She alleged that she made a protected disclosure and engaged in a protected activity when she refused to sign a telework agreement on the ground that, under the NTEU collective bargaining agreement with HHS, participation in the telework program was voluntary.

She claimed that HHS unlawfully retaliated against her by making her take leave without pay and by terminating her employment, among other alleged actions. The OSC completed its investigation and issued Ms. Reed an appeal notice. On February 5, 2021, Ms. Reed timely filed an individual right of action appeal to the Board.

On February 21, 2023, an administrative judge ("AJ") of the Board issued an initial decision on Ms. Reed's appeal. The AJ found that Ms. Reed made a protected disclosure under 5 U.S.C. § 2302(b)(8) on March 11, 2020, "when she refused to sign a telework agreement on the grounds that doing so would violate the parties' [collective bargaining agreement]." S. App'x 37. The AJ also found that Ms. Reed suffered personnel actions "by virtue of her [leave-without-pay] period and her termination," S. App'x 39, and that Ms. Reed's protected disclosure was a contributing factor with respect to both personnel actions.

Having determined that Ms. Reed had established a prima facie case of whistleblower retaliation, the AJ proceeded to consider whether the agency had shown by clear and convincing evidence that it would have taken the same action in the absence of Ms. Reed's protected disclosure. In making this determination, the AJ used the *Carr* factors. *See Carr v. Soc. Sec. Admin.*, 185 F.3d 1318 (Fed. Cir. 1999).

The AJ concluded that HHS proved by clear and convincing evidence that it would have forced Ms. Reed to take leave without pay absent her protected disclosure. Central to the AJ's determination were the facts that the parties' collective bargaining agreement provided that "the Employer may require employees to work at an alternate site in case of emergency situations," and the early period of the COVID-19 pandemic met the definition of an emergency situation. S. App'x 43. The AJ further rejected Ms. Reed's contention that her period of leave without pay was unnecessarily delayed when it took HHS several days to process her telework agreement once she finally completed it.

In contrast, the AJ concluded that HHS failed to show that it would have terminated Ms. Reed absent her protected disclosure. The AJ thus granted in part Ms. Reed's request for corrective action and ordered HHS to reinstate her, retroactive to September 25, 2020, with back pay and other relief.

HHS petitioned for full Board review. Ms. Reed filed a cross-petition concerning the adverse decision on the leave-without-pay issue. The Board dismissed HHS's petition, denied Ms. Reed's cross-petition, and affirmed the initial decision.

Ms. Reed seeks this court's review with respect to the leave-without-pay issue. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We may disturb the decision of the Board only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). We review the Board's fact findings for substantial evidence, and we give no deference to its

determinations on matters of law. *See Brenner v. Dep't of Veterans Affs.*, 990 F.3d 1313, 1322 (Fed. Cir. 2021). The petitioner "bears the burden of establishing error in the [Board's] decision." *Jones v. Dep't of Health & Hum. Servs.*, 834 F.3d 1361, 1366 (Fed. Cir. 2016) (quoting *Harris v. Dep't of Veterans Affs.*, 142 F.3d 1463, 1467 (Fed. Cir. 1998)).

On appeal, as to her leave without pay, Ms. Reed argues that "the [Board's] findings were erroneous" because the Board failed to appreciate that "[t]he agency violated the Telework Enhancement Act" when it required her to sign a telework agreement and forced her to take leave until she did so. Pet'r Informal Br. 8. According to Ms. Reed, the Telework Enhancement Act's text, purpose, and legislative history confirm that under the Act, federal employees may telework on a voluntary, not mandatory, basis. *Id.* at 7–8. Her theory appears to be that her employer *would* not have taken the same action against her in the absence of her protected disclosures because her employer *could* not have taken such action in light of the Telework Enhancement Act. *Id.* at 6–8. We are not persuaded.

There is no merit to Ms. Reed's argument that HHS violated the Telework Enhancement Act when it required her to take leave without pay after she refused to sign a telework agreement. The Act requires agencies to establish telework policies, determine employees' eligibility for telework, and notify employees of their eligibility. 5 U.S.C. § 6502(a). To participate in telework, eligible employees must enter into a written agreement with their agency employer that "outlines the specific work arrangement that is agreed to." *Id.* § 6502(b)(2). OPM has generally interpreted the Act to mean that employee participation in a telework program is voluntary. *See* Pet'r Informal Br. 7–8 (citing *Telework FAQ*, U.S. OFF. OF PERS. MGMT., https://www.opm.gov/faq/telework/Can-an-agency-force-an-employee-to-work-at-home.ashx (last accessed

Dec. 17, 2024)); *see also* U.S. OFF. OF PERS. MGMT., 2021 GUIDE TO TELEWORK AND REMOTE WORK IN THE FEDERAL GOVERNMENT (2021). However, as we have previously recognized, the Act also requires agencies to "incorporate telework into the continuity of operations plans of that agency," which will "supersed[e] any telework policy" for the duration of time that the continuity of operations plan is in place. *Carter v. Dep't of Def.*, No. 2022-1305, 2022 WL 2128592, at \*3 (Fed. Cir. June 14, 2022) (unpublished), *cert denied*, 143 S. Ct. 490 (2022) (quoting 5 U.S.C. § 6504(d)).

Here, HHS issued continuity of operations guidelines on March 16, 2020, which mandated that:

> All employees must be on an approved telework agreement (regular/recurring or episodic). Managers are responsible for ensuring employees have approved telework agreements. Employees must be telework ready by having their government issued computer, phone headset (recommended), PIV card, and external card reader (if applicable). Managers are responsible for ensuring employees are telework ready.

S. App'x 24. HHS transitioned to remote work the next day, March 17, 2020. This continuity of operations plan superseded HHS's previous telework policies and, in no uncertain terms, required all employees to enter telework agreements, in conformance with the requirements of the Act. We therefore cannot agree with Ms. Reed that the Board's "findings were erroneous," Pet'r Informal Br. 8, because HHS did not violate the Telework Enhancement Act by requiring her to work remotely during the pandemic. *See Carter*, 2022 WL 2128592, at \*3–5.[2]

---

[2] We also reject Ms. Reed's argument that the Board erred by not permitting her to file a reply brief. She was not automatically entitled to file a reply, and the Board did

We have considered the remainder of Ms. Reed's arguments and find them unpersuasive.

**AFFIRMED**

Costs

No costs.

---

not err in this regard. "Procedural matters regarding discovery and evidentiary issues 'fall within the sound discretion of the [B]oard and its officials.'" *Rueter v. Dep't of Com.*, 63 F.4th 1357, 1371 (Fed. Cir. 2023) (alteration in original) (quoting *Curtin v. Off. of Pers. Mgmt.*, 846 F.2d 1373, 1378 (Fed. Cir. 1988)). Ms. Reed does not establish that the denial of her motion was an abuse of discretion, much less that the Board's alleged error was harmful.