**Harry A. BLANK, Petitioner,**

v.

**DEPARTMENT OF the ARMY, Respondent.**

No. 00–3255.

United States Court of Appeals, Federal Circuit.

April 19, 2001.

Shelby W. Hollin, of San Antonio, TX, for petitioner.

Phyllis Jo Baunach, Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for respondent. With her on the brief were David M. Cohen, Director; and Robert E. Kirschman, Jr., Assistant Director. Of counsel on the brief was David Sulyma, Attorney, Department of the Army, of Ft. Sam Houston, TX.

Before MAYER, Chief Judge, GAJARSA, and DYK, Circuit Judges.

GAJARSA, Circuit Judge.

Harry A. Blank petitions for review of the final decision of the Merit Systems Protection Board ("the Board") affirming his removal by the Department of the Army ("the Army") for (1) failure to meet commitments to external organizations which he took on behalf of the agency, and (2) failure to complete assigned duties by the "suspense" or due dates.[1] *Blank v. Dep't of the Army*, 85 M.S.P.R. 443 (M.S.P.B.2000). For the reasons stated below, this court affirms.

## I. BACKGROUND

Mr. Blank served as a Family Program Specialist with Headquarters, Fifth United States Army, at Fort Sam Houston, Texas. Effective April 25, 1998, he was removed from his position after approximately nineteen years of federal service, including four years with the Army. The Board affirmed the removal based on the two charges listed above. The first charge is based on Mr. Blank's failure to attend a conference scheduled for October 21, 1997. The second charge is based on Mr. Blank's failure to update timely the Medical Entitlements Guide and duplicate certain Army Family Action Plan videotapes. The following is a summary of these events as found by the Board.

In June 1997, Mr. Blank arranged for a meeting to establish an Interservice Family Assistance Committee for all branches of the Utah National Guard. Mr. Blank spoke with the Family Program Coordinator of the Utah Army National Guard, and scheduled the meeting to take place at the State Area Command Headquarters, Draper, Utah, at 3:00 pm on October 21, 1997. Mr. Blank acknowledged that his presence at the meeting was crucial, and obtained specific written authorization for the temporary duty in Utah on October 6, 1997. He subsequently confirmed that he

1. The Army also based Mr. Blank's removal on the additional charge of insubordination. The Board, however, did not affirm this basis of removal because it found that the charge of insubordination was not sustained by the evidence. Accordingly, this court need not discuss the facts or circumstances concerning the additional charge of insubordination.

would be in attendance at the meeting on several occasions. Despite the noted importance of the meeting, Mr. Blank waited until the morning of October 21, 1997, to process the travel order and to implement the written authorization for temporary duty to Draper, Utah. On October 21, 1997, at approximately 1:00 pm, Mr. Blank contacted the Utah Army National Guard, and without explanation, canceled his appearance at the meeting. Subsequently, Mr. Blank's supervisors received angry and embarrassing messages from Utah Army National Guard officials because his absence placed them in an awkward position as hosts of the conference.

The second charge alleged that Mr. Blank was assigned certain specific duties, and failed to complete those duties by the deadline or "suspense" dates. Mr. Blank was instructed to prepare an updated version of the Medical Entitlements Guide ("Guide") by October 31, 1997. He did not submit his work until November 2, 1997. Moreover, the Guide submitted by Mr. Blank was incomplete because it did not contain handwritten changes to a copy of the original version of the Guide. Mr. Blank was also instructed to prepare a memorandum and to duplicate copies of certain Army Family Action Plan videotapes by December 2, 1997. However, the videotapes and memorandum were not complete and ready until December 8, 1997.

On February 23, 1998, Mr. Blank received a Notice of Proposed Removal dated February 11, 1998, citing the above charges as grounds for removal and signed by the Chief of Staff for the Fifth United States Army. The Notice of Proposed Removal also noted that Mr. Blank had been previously counseled about adhering to suspense dates, and had been placed on a Performance Improvement Plan as of January 23, 1996. He was also advised that his prior disciplinary action record revealed (1) a reprimand for insubordination dated September 16, 1996, (2) a five-day suspension from July 7 to 11, 1997, for failure to follow written instructions, and (3) a six-day suspension from October 27 to November 1, 1997, for disobeying a verbal directive. Mr. Blank submitted a written reply dated March 12, 1998, in which he disputed the charges against him. Thereafter, on April 2, 1998, the Chief of Staff of the Fifth United States Army conducted a further inquiry into this matter, and interviewed a number of agency employees, including the Deputy Chief of Staff and the Assistant Deputy Chief of Staff of the Fifth United States Army. By a letter dated April 13, 1998, Mr. Blank was informed by the Chief of Staff that he would be removed effective April 25, 1998.

Mr. Blank subsequently appealed the removal decision to the Board. On June 25, 1999, an administrative judge ("AJ") of the Board affirmed the removal decision. The AJ determined that the agency sustained the charges against Mr. Blank by a preponderance of the evidence. The AJ also found that the agency did not violate Mr. Blank's due process rights when the Chief of Staff interviewed various employees on April 2, 1998. The AJ concluded that the purpose of the interviews was to determine whether there were inconsistencies in the Army's case, and whether Mr. Blank's defenses of discrimination and hostile work environment were supported by the facts. The AJ ruled that the information obtained from the interviews was cumulative of facts already in the record or inconsequential to the charges. Thus, the AJ concluded that Mr. Blank failed to show that the interviews were "so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances." *Blank*, No. DA–0752–98–0348–I–2, slip. op. at 48 (MSPB

June 25, 1999) (citing *Stone v. Federal Deposit Ins. Corp.,* 179 F.3d 1368, 1377 (Fed.Cir.1999)). Finally, the AJ determined that the penalty of removal was within the limits of reasonableness and promoted the efficiency of the service. *Id.* at 49–51 (citing *Douglas v. Veterans Administration,* 5 MSPB 313, 5 M.S.P.R. 280, 305 (1981)). The AJ also concluded that the Army properly considered the *Douglas* factors, including Mr. Blank's past disciplinary record. *Id.* at 51. Mr. Blank appealed to the full Board.

On March 10, 2000, the Board affirmed two of the three charges noted above. Although the Board reversed the charge of insubordination, it nevertheless affirmed the penalty of removal.[2] *Blank,* 85 M.S.P.R. 443, 449 (MSPB 2000). The Board recognized that Mr. Blank's prior disciplinary action record revealed a "record of progressive discipline in recent years." *Id.* at 448. The Board observed that the Chief of Staff believed it "improbable that alternative sanctions would be effective in deterring further misconduct." *Id.* at 449. Thus, the Board held that "the penalty of removal is within the maximum limits of reasonableness" despite Mr. Blank's nineteen years of federal civilian service. *Id.* Mr. Blank now appeals to this court.

## II. STANDARD OF REVIEW

■ We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (1994). This court's scope of review over decisions of the Board is limited by statute. This court must affirm the decision unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (1994); *Cheeseman v. Office of Pers. Mgmt.,* 791 F.2d 138, 140 (Fed.Cir.1986). This court must reverse a decision of the Board if its decision is not in accordance with the requirements of the Due Process Clause of the Fifth Amendment or any other constitutional provision. *Khan v. United States,* 201 F.3d 1375, 1382 (Fed.Cir.2000). Determinations of witness credibility are "virtually unreviewable." *See Hambsch v. Dep't of the Treasury,* 796 F.2d 430, 436 (Fed.Cir.1986).

## III. DISCUSSION

### 1. *Ex Parte Communications*

Mr. Blank raises two arguments on appeal. First, he argues that the April 2, 1998 interviews conducted by the Chief of Staff were *ex parte* communications conducted in violation of the requirements of the Due Process Clause of the Fifth Amendment as described in *Stone v. Fed. Deposit Insurance Corp.,* 179 F.3d 1368 (Fed.Cir.1999). In *Stone,* this court held that when a deciding official receives new and material information by means of *ex parte* communications, "then a due process violation has occurred and the former employee is entitled to a new constitutionally correct removal procedure." 179 F.3d at 1377. In *Stone,* the deciding official received *ex parte* memoranda recommending

---

**2.** When the Board agrees with the penalty assessment, yet declines to affirm all charges, the Board must "precisely articulate the basis for upholding the agency's action." *Lachance v. Devall,* 178 F.3d 1246, 1258 (Fed.Cir.1999). In this case, the Board engaged in a "careful scrutiny of the circumstances" surrounding affirmed charges required to sustain the penalty. *Id.* Indeed, the Board specifically noted that when "not all of the agency's charges are sustained, the Board will consider carefully whether the sustained charges warrant the penalty imposed by the agency." *Blank,* 85 M.S.P.R. 443, 447 (MSPB 2000) (citing *Lachance,* 178 F.3d at 1260).

removal of the employee after the employee had received a Notice of Proposed Removal. *Id.* at 1372. We reasoned:

> The introduction of new and material information by means of *ex parte* communications to the deciding official undermines the public employee's constitutional due process guarantee of notice (both of the charges and of the employer's evidence) and the opportunity to respond. When deciding officials receive such *ex parte* communications, employees are no longer on notice of the reasons for their dismissal and/or the evidence relied upon by the agency. Procedural due process guarantees are not met if the employee has notice only of certain charges or portions of the evidence and the deciding official considers new and material information.

179 F.3d at 1376. However, we also stated that, "not every *ex parte* communication is a procedural defect so substantial and so likely to cause prejudice that it undermines the due process guarantee and entitles the claimant to an entirely new administrative proceeding. Only *ex parte* communications that introduce new and material information to the deciding official will violate the due process guarantee of notice." *Id.* at 1376–77.

■ *Stone* sets forth certain factors in determining whether *ex parte* communications introduce new and material information: (1) whether the information is merely cumulative, (2) whether the employee knew of and had an opportunity to respond to the information, and (3) whether the *ex parte* communications would likely result in undue pressure upon the deciding official to rule in a particular manner. *Id.* at 1377. The ultimate inquiry is whether the *ex parte* communication is "so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances." *Id.*

■ In this case, the AJ applied the *Stone* factors and determined that (1) the information obtained from the interviews was merely cumulative of the documentary evidence already assembled to support the Notice of Proposed Removal, (2) Mr. Blank was furnished with a copy of the questions asked and notes of the answers given during the interviews, and (3) the interviews were unlikely to result in undue pressure on the Chief of Staff to rule in any particular manner. *Blank*, No. DA–0752–98–0348–I–2, slip. op. at 33–36 (MSPB June 25, 1999). Based on these findings, the AJ determined that the interviews conducted on April 2, 1998 did not violate Mr. Blank's due process rights. *Id.* at 37. The AJ properly relied on the factors set forth in *Stone*. A thorough examination of the record before us, including notes of the interviews, leads us to the conclusion that this determination is supported by substantial evidence.

More importantly, the investigatory interviews conducted in this case are not the type of *ex parte* communications proscribed by *Stone*. In this case, the Chief of Staff interviewed various agency employees merely to confirm and clarify information that was already contained in the record. When a deciding official initiates *ex parte* communication that only confirms or clarifies information already contained in the record, there is no due process violation. Investigatory interviews and communications that do no more than confirm or clarify pending charges do not introduce new and material information. For that reason, information regarding pending charges obtained by investigatory communications that do no more than confirm or clarify the record does not undermine an employee's constitutional due process guarantee of notice

and the opportunity to respond. Thus, the interviews conducted by the Chief of Staff do not violate Mr. Blank's due process guarantees.

### 2. Prior Disciplinary Actions Subject to Ongoing Proceedings

Mr. Blank also argues that the Board improperly relied on his prior disciplinary action record in affirming the Army's decision of removal. Mr. Blank relies on *Gregory v. United States Postal Service*, 212 F.3d 1296 (Fed.Cir.2000), *cert. granted,* —— U.S. ——, 121 S.Ct. 1076, 148 L.Ed.2d 954 (2001). In *Gregory*, this court reversed a decision of the Board because the employee's removal was based, in part, on prior disciplinary actions that were still pending before the Board. *Id.* at 1300. We reasoned that, "consideration may not be given to prior disciplinary actions that are the subject of ongoing proceedings challenging their merits. To conclude otherwise would risk harming the legitimacy of the reasonable penalty analysis, by allowing the use of unreliable evidence (the ongoing prior disciplinary actions) to support an agency action." *Id.* Although an employee's disciplinary history is relevant when assessing a proper penalty, there can be no doubt that, "a penalty determination cannot be supported by an earlier prior disciplinary action that is subsequently reversed." *Id.*

Mr. Blank argues that the Board improperly relied on prior disciplinary actions against him even though he had complained that those actions had been motivated by a discriminatory purpose and those claims of discrimination were under review by the Equal Employment Opportunity Commission ("EEOC"). He argues that it is impermissible for the Board to rely on these prior disciplinary actions that were being challenged before the EEOC, just as it is impermissible under *Gregory* to rely on actions that are being challenged before the Board.

We decline to extend the rule announced in *Gregory* to include prior disciplinary actions pending before the EEOC for complaints of discrimination. The primary concern addressed in *Gregory* is that a penalty may be based on a prior disciplinary action that is later expunged by the Board. In *Gregory*, we recognized that a disciplinary action does not become final until affirmed by the Board. 212 F.3d at 1300. However, an EEOC complaint is not an attack on the validity of the disciplinary action itself. Rather, an EEOC complaint is a collateral attack, and often occurs after a disciplinary action has been affirmed by final decision of the Board. Moreover, EEOC appeals often take years to resolve. However, Congress has recognized the need for finality in disciplinary and Board proceedings. Indeed, one of the "central tasks" of the Civil Service Reform Act of 1978, Pub.L. 95–454, 92 Stat. 1111, was "to give agencies greater ability to remove or discipline *expeditiously.*" *Cornelius v. Nutt*, 472 U.S. 648, 662, 105 S.Ct. 2882, 86 L.Ed.2d 515 (1985) (emphasis added). If an agency is unable to consider prior disciplinary actions pending before the EEOC, the agency would be effectively prohibited from timely implementing progressive disciplinary measures.

■ Therefore, in assessing a proper penalty, the rule announced in *Gregory* does not prohibit the Board from relying on prior disciplinary actions being challenged before the EEOC for complaints of discrimination.

### IV. CONCLUSION

For these reasons, the final decision of the Board is

*AFFIRMED.*

COSTS

No costs.