**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

ANGEL D. NIEVES,
　　　　　Appellant,

　　　　v.

DEPARTMENT OF THE ARMY,
　　　　　Agency.

DOCKET NUMBER
NY-0752-17-0240-I-2

DATE: August 29, 2023

# THIS ORDER IS NONPRECEDENTIAL[1]

Lawrence Berger, Esquire, Glen Cove, New York, for the appellant.

Michael Huber, Esquire, Brooklyn, New York, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## REMAND ORDER

¶1　　The agency has filed a petition for review of the initial decision, which reversed the appellant's removal on due process grounds. For the reasons discussed below, we GRANT the agency's petition for review, REVERSE the administrative judge's finding of a due process violation, and REMAND the case

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

to the New York Field Office for further adjudication in accordance with this Remand Order.

## BACKGROUND

¶2    The appellant was employed by the agency as a GS-6 Police Officer stationed at Fort Hamilton, New York. *Nieves v. Department of the Army*, MSPB Docket No. NY-0752-17-0240-I-1, Initial Appeal File (IAF), Tab 16 at 12.   In February 2017, the agency proposed his removal for Conduct Unbecoming a Police Officer after he was arrested for the offense of driving while intoxicated. IAF, Tab 19 at 7-10.   Among other things, the proposal notice stated that the appellant had been suspended for 30 calendar days in September 2014 for Conduct Unbecoming a Police Officer and Failure to Follow a Written Directive. *Id*. at 9.   The misconduct underlying that suspension involved the appellant's arrest for slashing the tires of a soldier stationed at Fort Hamilton and then, after being issued a letter barring him from the base, violating the bar letter.   IAF, Tab 20 at 11-12, Tab 21 at 4-6.   The 2014 decision letter noted that the appellant admitted to consuming alcohol at the time he allegedly slashed the soldier's tires and that he had thereafter successfully completed an alcohol treatment program. IAF, Tab 20 at 6.

¶3    In his written reply to the deciding official in this case, the appellant discussed his prior suspension and argued that that he would be willing to seek additional treatment to ensure that he would not abuse alcohol in the future.  IAF, Tab 26 at 14-22.   According to the deciding official's memorandum documenting the appellant's oral reply, the appellant also raised these issues at that meeting. *Id*. at 9-10.

¶4    The deciding official removed the appellant, IAF, Tab 17 at 4-13, and this appeal followed, IAF, Tab 1.   At the hearing requested by the appellant, the deciding official testified that in the course of reviewing this case he spoke with the proposing official about the appellant's potential for rehabilitation.  *Nieves v.*

*Department of the Army*, MSPB Docket No. NY-0752-17-0240-I-2, Appeal File (I-2 AF), Tab 18, Hearing Compact Disc (HCD) (testimony of the deciding official). He explained that, during this discussion he referred to a previous incident mentioned in the proposal notice and that the proposing official confirmed his suspicion that the appellant lacked rehabilitative potential. HCD (testimony of the deciding official). He also testified that he could not recall whether he previously disclosed this conversation to either the appellant or his representative. HCD (testimony of the deciding official).

¶5      In her initial decision, the administrative judge concluded that the deciding official's hearing testimony established that he had violated the appellant's due process rights by engaging in an ex parte communication with the proposing official about the appellant's rehabilitative potential. I-2 AF, Tab 19, Initial Decision (ID) at 4-7. She therefore reversed the removal. ID at 6-7. The administrative judge did not discuss the merits of the agency action, the existence of a nexus, or the reasonableness of the penalty.

¶6      The agency filed a petition for review, arguing that the administrative judge erred in finding that it failed to provide the appellant with minimum due process in removing him.[2] Petition for Review (PFR) File, Tab 1. The appellant filed a response opposing the petition. PFR File, Tab 5.

¶7      Thereafter, the Office of the Clerk of the Board issued a notice to the parties that clarified that, although the administrative judge had placed the burden of proving that it provided the appellant with minimum due process on the agency, a claim that the agency violated the appellant's due process rights by

---

[2] In her initial decision, the administrative judge ordered the agency to provide the appellant with interim relief if either party filed a petition for review. ID at 8. With its petition for review, the agency provides a certification that it had requested its servicing human resources processing center to take the actions necessary to provide interim relief. PFR File, Tab 1 at 15. The appellant does not contest the agency's provision of interim relief, and thus we need not discuss this matter further. 5 C.F.R. § 1201.116.

engaging in ex parte communications is an affirmative defense for which the appellant bears the burden of proof. PFR File, Tab 6. The notice informed the appellant how he could establish that his due process rights were violated or that the agency committed harmful procedural error, and provided him an opportunity to submit additional evidence and argument. *Id*. at 2-3. The appellant responded to the notice, reasserting that the agency violated his due process rights. PFR File, Tab 7. Despite being afforded an opportunity to reply to the appellant's submission, the agency did not do so. PFR File, Tab 6 at 3.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶8 When, as here, a public employee has a property interest in his continued employment, the Government cannot deprive him of that interest without due process. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985). Due process requires, at a minimum, that an employee being deprived of his property interest be given "the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *Buelna v. Department of Homeland Security*, 121 M.S.P.R. 262, ¶ 16 (2014). Generally, a tenured Federal employee is entitled to "notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" prior to the deprivation of his property right in continued employment. *Loudermill*, 470 U.S. at 546; *Buelna*, 121 M.S.P.R. 262, ¶ 17. These predecisional proceedings "need not definitely resolve the propriety of the [penalty]" but are only "an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Loudermill*, 470 U.S. at 545-46.

¶9 In interpreting the Supreme Court's precedent, our reviewing court, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit), held in *Ward v.*

*U.S. Postal Service*, 634 F.3d 1274, 1279-80 (Fed. Cir. 2011), and *Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376-77 (Fed. Cir. 1999), that a deciding official violates an employee's due process rights when he relies upon new and material ex parte information as a basis for his decisions on the merits of a proposed charge or the penalty to be imposed. *See Mathis v. Department of State*, 122 M.S.P.R. 507, ¶ 6 (2015). An employee's due process right to notice extends to both ex parte information provided to a deciding official and information known personally to the deciding official, if the information was considered in reaching the decision and not previously disclosed to the appellant. *Id*. But not all ex parte communications rise to the level of due process violations. *Id*. Rather, only ex parte communications that introduce new and material information to the deciding official are constitutionally infirm. *Id*.

¶10      In *Stone*, the Federal Circuit identified the following factors to be used in determining if ex parte information is new and material: (1) whether the ex parte information introduced is cumulative, as opposed to new, information; (2) whether the employee knew of the information and had a chance to respond to it; and (3) whether the communication was of the type likely to result in undue pressure on the deciding official to rule in a particular manner. *Stone*, 179 F.3d at 1377; *Mathis*, 122 M.S.P.R. 507, ¶ 7. Ultimately, the Board must determine whether the ex parte communication is so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances. *Stone*, 179 F.3d at 1377; *Mathis*, 122 M.S.P.R. 507, ¶ 7.

¶11      An appellant's claim that an agency violated his due process rights by engaging in ex parte communications is an affirmative defense. *Helman v. Department of Veterans Affairs*, 856 F.3d 920, 937 (Fed. Cir. 2017) (finding that a claim that an appellant's due process rights were violated is an affirmative defense). The Board's regulations provide that the appellant bears the burden of proving his affirmative defenses by preponderant evidence. 5 C.F.R.

§ 1201.56(b)(2)(i)(C); *see Hulett v. Department of the Navy*, 120 M.S.P.R. 54, ¶¶ 10-11 (2013) (assigning the appellant the burden of proof regarding his affirmative defense of a due process violation). Thus, the administrative judge erred by assigning the agency the burden of proving that it provided the appellant with minimum due process. As discussed below, after properly placing the burden of proof, we find that the appellant failed to establish that his due process rights were violated.

The record demonstrates that the purported ex parte communication introduced cumulative, as opposed to new, information.

¶12        Regarding the first *Stone* factor, whether the information was new or cumulative, the Board has explained that a deciding official does not violate an employee's due process rights when he considers issues raised by an employee in his response to the proposed adverse action and then rejects those arguments in reaching a decision. *Mathis*, 122 M.S.P.R. 507, ¶ 9; *Grimes v. Department of Justice*, 122 M.S.P.R. 36, ¶ 13 (2014) (citing *Wilson v. Department of Homeland Security*, 120 M.S.P.R. 686, ¶ 11 (2014), *aff'd*, 595 F. App'x 995 (Fed. Cir. 2015)); *see* 5 C.F.R. § 752.404(g)(1) (stating that, in rendering a decision on a proposed adverse action, the agency will consider the reasons specified in the notice and any answer of the employee or her representative, or both, made to a designated official). Moreover, a deciding official does not violate an employee's due process rights by initiating an ex parte communication that only confirms or clarifies information already contained in the record. *Mathis,* 122 M.S.P.R. 507, ¶ 10 (citing *Blank v. Department of the Army*, 247 F.3d 1225, 1229 (Fed. Cir. 2001). On the other hand, information from an ex parte discussion may be considered new and material if it constitutes a significant departure from evidence already in the record and the deciding official considers it in reaching a decision. *Id*., ¶ 11 (citing *Young v. Department of Housing and Urban Development*, 706 F.3d 1372, 1375-78 (Fed. Cir. 2013)).

¶13    Here, as noted previously, the proposal notice outlined the appellant's prior disciplinary record.  IAF, Tab 19 at 9.  Significantly, in concluding that discussion, the proposing official wrote that he saw "little to no potential for rehabilitation." *Id*.  In addition, the appellant received a copy of the proposal and decision notices from his prior suspension. *Id*. at 16.  Furthermore, in his written and oral replies to the instant proposed removal, the appellant addressed his prior suspension, argued that a less severe sanction would suffice in this case, and stated that he would be willing to seek additional treatment to prevent further alcohol abuse.  IAF, Tab 26 at 9-10, 19, 21.

¶14    The deciding official testified that he spoke with the proposing official about the appellant's potential for rehabilitation, noting the appellant's prior suspension, and that the proposing official confirmed the deciding official's suspicion that the appellant lacked rehabilitative potential.  HCD (testimony of the deciding official).  The administrative judge found that the record was unclear as to what, "precisely," the proposing official said, and that the agency failed to proffer evidence indicating that the proposing official "only reiterated" information contained in the proposal notice.  ID at 5-6.  She concluded that the record supported a finding that the information the proposing official provided to the deciding official was new because "[i]f [the proposing official's] additional information was merely cumulative, there is no reason that it would have been the sole factor that resolved [the deciding official's] remaining skepticism."  ID at 6.

¶15    The administrative judge's analysis was flawed.  First, to the extent that the record is unclear as to what the proposing official told the deciding official, the lack of clarity weighs against a finding of a due process violation, as it is the appellant's burden to prove that a violation occurred, not the agency's burden to prove the absence of a violation.  5 C.F.R. § 1201.56(b)(2)(i)(C); *see Hulett*, 120 M.S.P.R. 54, ¶¶ 10-11 (assigning the appellant the burden of proof regarding his affirmative defense of a due process violation).  Second, contrary to the administrative judge's finding that the proposing official's communication was

"the sole factor that resolved [the deciding official's] remaining skepticism," ID at 6, the deciding official testified that, although the proposing official's confirmation of his own suspicion that the appellant lacked rehabilitative potential was an important factor in leading him to conclude that the appellant lacked rehabilitative potential, "it was not the sole factor," HCD (testimony of the deciding official). The administrative judge gave no indication that she found the deciding official's testimony not credible.[3] Accordingly, her finding on this issue appears to stem from an erroneous view of the deciding official's testimony.

¶16    The only evidence in the record about the communication between the deciding official and the proposing official comes from the deciding official's hearing testimony. As noted above, he indicated that he talked with the proposing official about the appellant's prior misconduct and the proposing official reiterated that the appellant lacked rehabilitative potential. HCD (testimony of the deciding official). As also noted previously, the proposal notice set forth the appellant's prior discipline and specifically stated that the proposing official saw "little to no potential for rehabilitation." IAF, Tab 19 at 9.

¶17    Thus, in appropriately applying the correct burden of proof for this affirmative defense, we find that the appellant did not show that the deciding official did anything more than confirm or clarify information already in the record and disclosed to the appellant. IAF, Tab 19 at 9, 16; *see Blank*, 247 F.3d at 1229. Nor did the appellant show that the proposing official revealed new information to the deciding official.

---

[3] The deciding official also testified that the proposing official's view of the appellant's rehabilitative potential was a consideration among others and that he took it into consideration. HCD (testimony of the deciding official). None of these statements supports the administrative judge's conclusion.

<u>The appellant failed to prove that he was unaware of the ex parte communication and had no chance to respond to it.</u>

¶18    Regarding the second *Stone* factor, whether the employee knew of the information and had a chance to respond to it, the Federal Circuit has found that information raised in an ex parte interview with the deciding official before he rendered his decision "more than satisfie[d] the second *Stone* factor considering that [the appellant] neither learned of the *ex parte* communication, nor had an opportunity to respond to it before the deciding official." *Young*, 706 F.3d at 1377.  Here, the record is unclear regarding whether the appellant learned of the ex parte communication before providing his response to the deciding official.

¶19    At the hearing, the appellant's representative asked the deciding official whether he had the conversation with the proposing official about the appellant's rehabilitative potential after the appellant had received the proposal and he had given his reply.  HCD (testimony of the deciding official).  The deciding official indicated that he could not recall if the conversation occurred before or after he received the proposal notice from the proposing official.  HCD (testimony of the deciding official).  The appellant's representative also asked the deciding official whether he had any recollection of disclosing the conversation with the proposing official to either the appellant or his representative.  HCD (testimony of the deciding official).  The deciding official replied that he did not recall, but noted that he had a meeting with the appellant and his representative during which they "discussed a number of things."  HCD (testimony of the deciding official).  This is all of the evidence on this issue as the appellant did not testify about whether he was informed of the deciding official's conversation with the proposing official.[4]  Accordingly, based on the record evidence, the appellant failed to

---

[4] On review, the appellant asserts that at the hearing the deciding official affirmed that he never informed the appellant about his conversation with the proposing official prior to removing him.  PFR File, Tab 1 at 8.  We have reviewed the hearing testimony and find that the deciding official did not make such an explicit statement.

establish that he was not informed about the deciding official's conversation with the proposing official about his rehabilitative potential.[5]

The appellant failed to show that the ex parte communication was "so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances."

¶20 Regarding the third *Stone* factor, whether the communication was of the type likely to result in undue pressure on the deciding official to rule in a particular manner, the court has recognized that "the lack of such undue pressure may be less relevant to determining when the ex parte communications deprived the employee of due process where . . . the [d]eciding [o]fficial admits that the ex parte communications influenced his penalty determination," making the "materiality of the ex parte communications . . . self-evident from the [d]eciding [o]fficial's admission." *Ward*, 634 F.3d at 1280 n.2. Here, the deciding official testified that the proposing official's confirmation of his own suspicion that the appellant lacked rehabilitative potential was an "important factor" in his determination, but not the "sole factor." HCD (testimony of the deciding official). Because the communication was of some significance, but not the "sole factor" in the deciding official's decision-making process, we find that this factor slightly weighs in the appellant's favor.

¶21 As explained previously, in considering whether an appellant has established a due process violation, the Board must determine whether the ex parte communication is so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances. *Stone*, 179 F.3d at 1377; *Mathis*, 122 M.S.P.R. 507, ¶ 7. Weighing all the *Stone* factors, and particularly noting the first factor regarding whether the ex parte information was new or cumulative, we find that the

---

[5] That the appellant's representative seemed to have learned about the conversation for the first time at the hearing while questioning the deciding official is not evidence. *Cf. Felton v. Department of the Air Force*, 106 M.S.P.R. 198, ¶ 7 (2007) (same).

appellant has failed to meet his burden. *See Blank*, 247 F.3d at 1229 (finding that when a deciding official initiates an ex parte communication that only confirms or clarifies information already disclosed to the appellant, there is no due process violation); *cf. Stone*, 179 F.3d at 1376-77 (indicating that an ex parte communication to the deciding official does not violate an employee's due process rights if the employee is given notice of and an opportunity to respond to the information communicated).

The appellant failed to prove that the agency committed a harmful procedural error, and we therefore remand this appeal so that the administrative judge may adjudicate the merits of the agency's case in the first instance.

¶22    If an appellant fails to prove that a deciding official's ex parte communications violated his due process rights, the Board must consider whether the agency committed harmful procedural error. *Putnam v. Department of Homeland Security*, 121 M.S.P.R. 532, ¶ 10 (2014). A harmful error is an error by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Ronso v. Department of the Navy*, 122 M.S.P.R. 391, ¶ 14 (2015); 5 C.F.R. § 1201.4(r). The agency's "procedures" include those required by statute, rule, or regulation, *Jones v. Department of the Treasury*, 93 M.S.P.R. 494, ¶ 10 (2003), and also encompass the binding provisions of applicable collective bargaining agreements, *Pleasant v. Department of Housing and Urban Development*, 98 M.S.P.R. 602, ¶ 8 (2005). It is the appellant's burden to prove the existence of a harmful error by preponderant evidence. 5 C.F.R. §§ 1201.4(r), 1201.56(b)(2)(i)(C), (c)(1).

¶23    Despite being provided the opportunity to do so, the appellant put forward no argument or evidence that the agency committed harmful procedural error. PFR File, Tabs 6-7. We nevertheless considered whether the agency violated procedures requiring that, in arriving at its decision, it only consider the reasons specified in the proposal notice and any reply provided by the employee. *See*

5 U.S.C. § 7513(b); 5 C.F.R. § 752.404(g).  For the reasons discussed above, we find that the appellant failed to prove that the deciding official based his decision, even in part, on reasons not specified in the proposal notice or discussed in the appellant's response.  Nor has the appellant established that any purported error was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error.[6]  Accordingly, we find that the appellant failed to establish that the agency committed harmful procedural error.

¶24   The administrative judge did not make findings of fact regarding whether the agency proved that the appellant committed the charged misconduct, established a nexus between the misconduct and the efficiency of the service, or demonstrated the reasonableness of the imposed penalty.  As the hearing officer, the administrative judge is in the best position to make any necessary factual findings and detailed credibility assessments.  *See Mastrullo v. Department of Labor*, 123 M.S.P.R. 110, ¶ 27 (2015).  We therefore remand this appeal to the administrative judge to resolve these issues in the first instance.

---

[6] Although the deciding official testified that the proposing official's communication to him was an important factor in his determination that the appellant lacked rehabilitative potential, he noted that it was not the sole factor.  HCD (testimony of the deciding official).  Considering the appellant's position as a police officer and the fact that he was arrested for driving while intoxicated—in addition to his previous misconduct also involving alcohol abuse—we find it unlikely that the deciding official would have mitigated the penalty in the absence of the proposing official's communication.  IAF, Tab 17 at 4-9.

**ORDER**

¶25     For the reasons discussed above, we remand this case to the New York Field Office for further adjudication in accordance with this Remand Order, including the holding of a supplemental hearing regarding the merits of the agency action and the reasonableness of the penalty.


FOR THE BOARD:                                    _____/s/ for_____
                                                 Jennifer Everling
                                                 Acting Clerk of the Board

Washington, D.C.